IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| KEISHA BOYKIN, individually and on behalf of the Estate of Darren Boykin,<br>    Plaintiff,<br><br>DARREN BOYKIN, individually,<br>    Intervenor Plaintiff,<br><br>vs.<br><br>JERRIKA WEAVER, BRENT HOBBS, and WILLIAM SCOTT,<br>    Defendants. | §§§§§§§§§§§§ | Civil Action No. 5:21-CV-106 |

### INTERVENOR PLAINTIFF'S AMENDED ORIGINAL COMPLAINT

COMES NOW, Intervenor Plaintiff Darren Boykin and complaining of Defendants, Jerrika Weaver ("Weaver"), Brent Hobbs ("Hobbs") and William Scott ("Scott"), and for cause would show the Honorable Court as follow:

### I.   NATURE OF THE ACTION

1. This is an action brought by the Intervenor Plaintiff against Weaver, Hobbs, and Scott for their failure to render medical aid resulting in the death of Darren Boykin ("Boykin") under the color of law in violation of Boykin's individual rights under the Eight and Fourteenth Amendments of the United States Constitution. Specifically, the Defendant officers' failure to render medical aid and attention to Boykin, which amounts to deliberate indifference, despite the need to do so, amounts to cruel and unusual punishment.

2. Each of the Defendant officers in this case had a duty to provide adequate medical care to Boykin but were deliberately indifferent to a distressed situation. Clearly, the Defendant officers failed to properly administer CPR and attended to Boykin with faulty lifesaving equipment.

## II.    PARTIES

3.    Intervenor Plaintiff, Darren Boykin, is a citizen of the United States and a resident of Ohio. Mr. Boykin is also the biological father of Darren Boykin, and as such is entitled to bring this lawsuit in his individual capacity as a statutory wrongful death beneficiary of Darren Boykin. Mr. Boykin also brings this lawsuit on behalf of all other wrongful death beneficiaries.  Tex. Civ. Prac. & Rem. Code § 71.004(b).

4.    Defendant Jerrika Weaver, upon information and belief, is a resident of Bowie County, Texas, and at all times material herein was an officer for the Texarkana Texas Police Department.  Defendant Weaver may be served with citation at the Texarkana Police Department, 100 N. State Line Ave., #16, or wherever she may be found. Defendant Weaver is being sued in her individual capacity.

5.    Defendant Brent Hobbs, upon information and belief, is a resident of Bowie County, Texas, and at all times material herein was an officer for the Texarkana Texas Police Department.  Defendant Hobbs may be served with citation at the Texarkana Police Department, 100 N. State Line Ave., #16, or wherever he may be found. Defendant Hobbs is being sued in his individual capacity.

6.    Defendant William Scott, upon information and belief, is a resident of Bowie County, Texas, and at all times material herein was an officer for the Texarkana Texas Police Department.  Defendant Scott may be served with citation at the Texarkana Police Department, 100 N. State Line Ave., #16, or wherever he may be found. Defendant Scott is being sued in his individual capacity.

## III.    JURISDICTION AND VENUE

7.    Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Eighth and Fourteenth Amendments of the United States

Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and immunities guaranteed to Plaintiff by constitutional and statutory provisions.

8. Venue is proper in this court because the causes of action occurred within the Eastern District of Texas, Texarkana Division.

## IV.   FACTS

9. On or about August 29, 2019, Boykin, suspected of a crime that amounted to a misdemeanor, was being pursued on foot by officers employed by the Texarkana College Police Department ("TCPD"). At all times, Boykin was unarmed and was not trying to harm anyone. The TCPD officers chased Boykin for over half a mile before catching up with him, during one of the hottest months in Texas.

10. Once the TCPD officers' detained Boykins, placed Boykins in handcuffs without any resistance and waited for Texarkana Police officers to arrive to transport Boykins to the Jail. It was clear that Boykins was not feeling well.

11. While Boykins was in handcuffs, he attempted to get in a position that would provide some relief but was not allowed to. It was clear that Boykin was having trouble breathing and appeared to be gasping for air as he laid on the ground. Clearly, Boykin was not breathing normal and knowing that he was running in very hot temperature, the officers failed to provide Boykin with any medical attention, nor did they call for medical personnel to evaluate Boykin. Instead, Weaver appeared to get satisfaction in knowing that Boykin was not feeling well. Boykin was so weak he was unable to walk on his own.

12. As a result, Defendant Weaver and the Texarkana College officers on scene lifted Boykin off the ground and carried him to the patrol car. Despite Boykin's inability to walk, the Defendant officers refused to take Boykin's medical condition seriously.

13. When Boykin advised the officers that he could not get in the patrol car due to being weak from the breathing issues he was experiencing, Defendant Weaver grabbed Boykin by the right arm, a Texarkana College officer took him by the left arm, and another Texarkana College officer picked up Boykin's feet. In addition to having trouble breathing, Boykin also advised the Defendant Officers that his leg hurt.

14. Shortly thereafter, Defendant Hobbs arrived. After Darren was placed in the hot patrol car, Defendant Hobbs got water and gave it to Texarkana College Police Officer Altamirano but failed to provide Boykin with any, despite knowing that Boykin was having problem breathing and was likely dehydrated.

15. After being in the hot patrol car for some time, Boykin started making noises to get the officers' attention. Defendant Hobbs heard some loud, but muffled yelling sounds coming from the patrol unit.

16. Defendant Hobbs opened the door of the patrol unit and Boykin immediately advised Hobb that he couldn't breathe. Defendant Hobbs acknowledged in his incident report following this incident that when he heard Boykin state that he couldn't breathe, he observed Boykin breathing hard as if he was out of breath. Defendant Hobbs did not provide Boykin with water as he had just provided Officer Altamirano. Defendant Hobbs, knowing that Darren was complaining of not being able to breath and showing physical signs of being out of breath that supported this contention, chose not to dispatch medical assistance although nothing prevented him from taking the proper steps that would have likely saved Boykin's life.

17. Defendant Hobbs relayed to Defendant Weaver that Boykin complained that he could not breathe. Instead of checking on Boykin, Defendant Weaver responded, "he'll be

**INTERVENOR PLAINTIFF'S AMENDED ORIGINAL COMPLAINT**
**Page 4**

fine."  Defendant Weaver showed a clear disregard for Boykin's condition once she was advised that Boykin had a felony warrant.

18.    Defendant Weaver then told Boykin, "You can't call I can't breathe after you ran forever and then you have felonies."

19.    Boykin, obviously struggling to breathe, responded, "I can't."  Defendant Weaver failed to call for medical attention.

20.    When Defendant Scott arrived, Defendant Hobbs relayed to Defendant Scott that Boykin had complained that he could not breathe, demonstrating that Defendant Hobbs believed it was serious enough to tell the sergeant who had arrived on scene. Defendant Scott failed to take any action.

21.    As the Sergeant and supervisor on scene, Defendant Scott had the ability to call for medical assistance or direct Defendant Hobbs or Defendant Weaver to call for medical assistance for Boykin but failed to do so.  Knowing that Boykin complained of being unable to breathe, Defendant Scott chose not to call for medical assistance for Boykin, and instead, directed Defendant Weaver to transport Darren to the Jail.

22.    Despite Defendant Scott's directive, Defendants Hobbs and Weaver had the ability to call for medical assistance for Boykin and/or to take Boykin directly to the hospital but failed to do so.  Defendant Weaver, knowing that Boykin had been involved in a strenuous activity, and was having trouble breathing, was unable to walk, and was complaining of his leg hurting, did not call for medical personnel to evaluate Boykin. Instead, Defendant Weaver transported Boykin to the Bowie County Jail.

23.    Prior to the backing the patrol car away from the scene, Boykin told Defendant Weaver, 'I can't breathe."  About a minute and a half later, while Defendant Weaver was driving, Boykin again told Weaver, "I can't breathe."

24. In the middle of the transport at Summerhill Rd. and Richmond Rd., Boykin once again advised Defendant Weaver, "ma'am, I'm about to pass out." Boykin stated that he was going to pass out three times.

25. Defendant Weaver callously responded, "just lean against the glass." Boykin then stated, "I can't even talk." Defendant Weaver responded, "ok." There's no dispute that Defendant Weaver heard Boykin express that he was going to pass out and that he couldn't even talk but refused to do anything.

26. Instead of dispatching for medical care or driving to the hospital, which was on the way to the Jail, Defendant Weaver continued driving directly to the jail and simply responded to Boykin that he should rest his head on the glass.

27. Defendant Weaver, knowing that Boykin was struggling to breathe, his leg was hurting, he was not able to walk, he needed to be carried to the patrol car, and he was stating that he was going to pass out and he could not even talk, chose not to dispatch for medical assistance or to drive Boykin to the hospital, which was on the way to the Jail; but instead, simply told Boykin to put his head on the glass.

28. At Texas Blvd. and New Boston Rd., Boykin leaned over to the left. Defendant Weaver said some words to Boykin, but he did not respond. Defendant Weaver could no longer see Boykin's face when she was trying to speak to him and saw that he was leaned over. Defendant Weaver asked Boykin where he was staying but Boykin did not respond. Defendant Weaver just said, "alright, you know you are still going to jail either way, right?" Boykin did not respond.

29. Defendant Weaver looked back at Boykin who was obviously unconscious and in need of medical attention and sarcastically said, "ok." Defendant Weaver then looked back again at Boykin and started laughing at Boykin.

30. Defendant Weaver asked Boykin if he was comfortable. Boykin did not respond. Defendant Weaver then began humming, showing a complete disregard for human life. Defendant Weaver did not view Boykin as a human being, but simply a felon who she was not going to give medical care despite an obvious need.

31. Defendant Weaver asked Boykin twice if he was getting air in the back seat. Each time, Boykin did not respond. Defendant Weaver continued to look back at Boykin who was obviously unconscious and in serious need of medical help. Defendant Weaver then told Boykin, "you know somebody that passes out isn't able to stop themselves from falling forward, fun fact." It was clear that no matter how obvious it was that Boykin needed medical attention, the fact that Defendant Weaver believed he was wanted for felonies meant she was not going to help him.

32. Defendant Weaver drove passed Wadley Regional Medical Center after seeing Boykin leaned over so that his face could no longer be seen and after Boykin was no longer responding to Defendant Weaver; however, she chose not to take Boykin to the hospital and to continue driving to the jail.

33. At Martin Luther King Jr. Blvd. and Texas Blvd., Boykin began gagging and trying to take a breath. When Defendant Weaver finally arrived at the Jail, Boykin was nonresponsive.

34. Defendant Weaver tried waking Boykin by using a sternum rub, but he did not respond. Defendant Weaver pulled Boykin out of the car, placed him on the ground, and finally began giving medical attention by the way of performing CPR in an improper manner that could further harm Boykin. Boykin was still restrained in handcuffs as Defendant Weaver began to administer CPR. Defendant Scott assisted Defendant Weaver.

35. Defendant Weaver finally requested medical personnel from LifeNet and the fire department to assist with Boykin. This call for medical assistance at the Jail was a call that Defendant Weaver could have made before transporting Boykin when he was having trouble

breathing, unable to walk, and complaining of being in pain; however, Defendant Weaver deliberately chose not to make that call or provide any medical assistance at that time.

36. Defendant Weaver deliberately chose not to make that call or provide any medical assistance to Boykin at that time. This call for medical assistance at the Jail was a call that Defendant Weaver could have made while transporting Boykin when she heard him complain that he was about to pass out and that he could not even talk; however, Defendant Weaver deliberately chose not to make that call or provide any medical assistance at that time.

37. This call for medical assistance at the Jail was a call that Defendant Weaver could have made while transporting Boykin when she observed Boykin lean over however, Defendant Weaver deliberately chose not to make that call or provide any medical assistance at that time.

38. This call for medical assistance at the Jail was a call that Defendant Weaver could have made while transporting Boykin when he began gagging and trying to breathe; however, Defendant Weaver deliberately chose not to make that call or provide any medical assistance at that time.

39. LifeNet transported Darren to Wadley Regional Medical Center, the same hospital Defendant Weaver passed knowing that Boykin's health was deteriorating in her patrol car, for further medical attention. Later at the jail while speaking to the jail nurse regarding Boykin's health, Defendant Weaver stated, "he said he was going to pass out but he is also being charged with a bunch of felonies so it's one of those things," and while explaining to other officers what happened during the transport, Defendant Weaver stated, "you know how he's got the <u>felony faint</u> in the backseat - 'oh I'm gonna pass out' he's fine," and even stated, "he kept saying he was tired, his legs hurt, he kept wanting to lay down - <u>normal stuff when you're getting charged with felonies.</u>"

**INTERVENOR PLAINTIFF'S AMENDED ORIGINAL COMPLAINT**
**Page 8**

40. As a direct result of Defendant Weaver consciously choosing not to call for or provide medical assistance for Boykin even though she drove directly passed the Wadley Regional Medical Center, despite being aware that he was having trouble breathing, was about to pass out, was having trouble speaking, and then actually saw him lean over and become nonresponsive consistent with passing out, Boykins died.

41. Following Boykin's death, and for the two years preceding the filing of this Complaint, the Intervenor Plaintiff was advised that Boykin's death was due to natural causes. In fact, upon information and belief, the medical examiner listed the cause of Boykin's death as natural. Based on this representation, the Intervenor Plaintiff had no reason or evidence to believe that the Medical Examiner and the Texarkana Police Department were not being forthcoming or were being dishonest about the cause of Boykin's death. The Texarkana Police Department, however, knew of the Defendant officers' wrongful acts and covered them up by never releasing the video of the incident, or any of the incident reports to the public. Instead, they covered up that information until just recently, when the Department finally released the body cam video footage. Not until that time did the Intervenor Plaintiff discover that there was an intentional misrepresentation as to the cause of Boykin's death. As detailed above, and as revealed for the first time on the body-cam video, it was discovered that Boykin advised the Defendant Officers on multiple occasions that he could not breathe and despite his multiple pleas for help, Boykins was ignored. Boykins eventually died after the Defendant Officers attempted to perform CPR using an improper technique and faulty equipment. The Texarkana City Council, City Manager and Chief of Police were fully aware of this information and the unconstitutional actions of their officers. By refusing to release the video, the Council, City Manager, and Chief of Police ratified the unconstitutional conduct of Weaver, Hobbs, and Scott. The contents of the bodycam video were also likely intentionally withheld so that no action could be taken against the Defendant officers and the City of Texarkana.

**Page 9**

42. The U.S. Supreme Court has consistently stated for some time that there is an obligation to provide adequate medical care to detainees and prisoners. The source of that obligation stems from the Eighth Amendment to the U.S. Constitution, and its prohibition on "cruel and unusual" punishment. As a result of the cruel and unusual treatment, Boykin experienced severe and excruciating pain. As a result of the Defendant officers' failure to render proper medical aid and attention to Boykin, he died. Boykin suffered extreme and severe mental and emotional distress, agony, and anxiety.

43. Defendants Weaver, Hobbs and Scott's unlawful and unwarranted acts, lack of training and the official customs or policies of the TPD caused Boykin's injuries.

44. Moreover, no reasonably competent official would have concluded that the actions of Defendants Weaver, Hobbs and Scott described herein would not violate Plaintiff's constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that the Defendants Weaver, Hobbs, and Scott's conduct was justified. Further, Defendants Weaver, Hobbs, and Scott's failure to render medical aid and refusal and/or delay in seeking the proper medical aid and attention for Boykin amounted to cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution.

45. As a direct and proximate result of the Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss. For these losses, Intervenor Plaintiff seeks damages in a sum in excess of the minimum jurisdictional limits of the court.

### V.    CAUSES OF ACTION

**A.    Cause of Action against Defendants under 42 U.S.C. § 1983 in violation of Boykin's Eighth and Fourteenth Amendment rights.**

46. Intervenor Plaintiff incorporates by reference paragraphs 1 through 45 as if fully set forth herein. Intervenor Plaintiff would show that Defendants' actions on the occasion in

question were wrongful in depriving Boykin of his constitutional rights, as alleged more fully below.

### 1. Failure to implement medical policy as required by Texas law.

47. Intervenor Plaintiff would show that at all times material hereto, Defendants were aware that Boykin was in a distress situation and was having difficulties breathing. Boykin advised Defendants on multiple occasions that he could not breathe but was ignored. Defendants knew of Boykins' medical needs but failed to and/or refused to provide Boykin with the required care. Defendants' failure to provide Boykin with timely medical attention resulted in Boykin's death.

### 2. The denial of medical care to the Plaintiff.

48. Consistent with its failure to implement medical policy, the Texarkana Police Department and Defendants violated 42 U.S.C. § 1983 when its governmental officials acted or failed to act with subjective deliberate indifference to Boykin's serious medical needs. Deliberate indifference exists when the official or officials refuse to treat the Plaintiff, ignore medical complaints, or intentionally provide the incorrect medical treatment. It was clearly established at the time that a prisoner has a constitutionally protected right to be free from a prison official's deliberate indifference to a prisoner's serious medical needs. *See Easter v. Powell,* 467 F.3d 459, 465 (5th Cir. 2006).

49. The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston,* 955 F.3d 501, 506 (5th Cir. 2020) (citing *Thompson v. Upshur Cty., Tex.,* 245 F.3d 447, 457 (5th Cir. 2001) (citing, *inter alia, Estelle v. Gamble,* 429 U.S. 97, 103 (1976))).

50. Boykin had a constitutional right to medical care under the Fourteenth Amendment while in Defendants' custody. Refusing to treat a prisoner's complaints can give

rise to Section 1983 liability. *Galvan v. Calhoun Cty.,* 719 F. App'x 372 (5th Cir. 2018); *Easter v. Powell,* 467 F.3d 459, 461-65 (5th Cir. 2006); *Harris v. Hegmann,* 198 F.3d 153, 159-60 (5th Cir. 1999); *Alderson v. Concordia Par. Corr. Facility,* 848 F.3d 415, 422 n.8. (5th Cir. 2017). An episodic-acts-or-omissions claim faults specific officials for their acts or omissions.

51. As to the individual in an episodic-acts-or-omissions claim, the relevant question becomes **"whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge."** *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 645 (5th Cir. 1996).

52. An official's actual knowledge of a substantial risk may only be inferred if the "substantial risk" was obvious. *Easter,* 467 F.3d at 463. Deliberate indifference is shown when a plaintiff properly alleges that officials "refused to treat him ... or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino,* 239 F.3d at 756 (quoting *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)).

53. Defendants failed to follow proper medical guidelines by refusing to get Boykin the needed attention. Despite being aware that Boykin required medical attention, Boykin's pleas for medical attention were ignored by Defendants.

54. Defendants' refusal to treat Boykin and ignoring his repeated pleas for help were acts of subjective deliberate indifference that caused an unconstitutional delay in medical treatment which caused Boykin's death.

### Defendant Weaver

### Defendant Weaver was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.

55. Defendant Weaver was aware of and ignored obvious indicia of a risk of serious harm, specifically including but not limited to, the facts that Boykin repeatedly stated he

couldn't breathe, Boykin's breathing was labored supporting his complaint that he couldn't breathe, Boykin stated he was about to pass out, Boykin became nonresponsive in the back of the patrol car, and Boykin became unconscious in the back of the patrol car. Thus, Defendant Weaver was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. *Dyer,* 964 F.3d at 380.

### **Defendant Weaver actually drew that inference.**

56. Defendant Weaver drew this inference because she acknowledged his statements of not being able to breathe and that he was going to pass out, she continued to look at _him throughout the drive and saw that he was unconscious, she continued to speak to him throughout the drive and was aware that he had become nonresponsive.

57. Further, Defendant Weaver's actual knowledge of the substantial risk can be inferred because it was so obvious and <u>the need was so apparent that even laymen would recognize that care is required</u> - as Boykin repeatedly stated he couldn't breathe, Boykin's breathing was labored supporting his complaint that he couldn't breathe, Boykin stated he was about to pass out, Boykin became non-responsive in the back of the patrol car, and Boykin became unconscious in the back of the patrol car. *Dyer,* 964 F.3d at 380; Thus, Defendant Weaver drew the inference that a substantial risk of serious harm existed.

58. Accordingly, Defendant Weaver was deliberately indifferent to Boykin's health and safety because Defendant Weaver "refused to treat him ... or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" by not providing medical care or summoning medical care for Boykin prior to leaving the arrest scene and on the way to the jail - instead laughing at Darren. *Domino,* 239 F.3d at 756 (quoting *Johnson,* 759 F.2d at 1238).

### **Defendant Hobbs**

### **Defendant Hobbs was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.**

59.     Defendant Hobbs was aware of and ignored obvious indicia of a risk of serious harm, specifically including but not limited to, the facts that Boykin stated he could not breathe, and his breathing was labored in support of this contention.

60.     Thus, Defendant Hobbs was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. *Dyer,* 964 F.3d at 380.

### **Defendant Hobbs actually drew that inference.**

61.     Defendant Hobbs drew this inference because he witnessed Boykin's labored breathing and heard him complain that he could not breathe and then Defendant Hobbs relayed this information to both Defendant Weaver and Defendant Scott.

62.     Further, Defendant Hobbs' actual knowledge of the substantial risk can be inferred because it was so obvious, and the need was so apparent that even laymen would recognize that care is required -  as Darren stated he could not breathe, and his breathing was labored which supported that contention. *Dyer,* 964 F.3d at 380; *Easter,* 467 F.3d at 463; *Domino,* 239 F.3d at 756; *Gobert,* 463 F.3d at 345. Thus, Defendant Hobbs drew the inference that a substantial risk of serious harm existed.

63.     Accordingly, Defendant Hobbs was deliberately indifferent to Darren's health and safety because Defendant Hobbs "refused to treat him ... or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" by not providing medical care or summoning medical care for Boykin. *Domino,* 239 F.3d at 756 (quoting *Johnson,* 759 F.2d at 1238).

### Defendant Scott

### Defendant Scott was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.

64. Defendant Scott was aware of and ignored obvious indicia of a risk of serious harm, specifically including but not limited to, the facts that Boykin had complained that he could not breathe, and Defendant Hobbs took that complaint seriously enough to relay it to Defendant Scott.

65. Thus, Defendant Scott was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. *Dyer,* 964 F.3d at 380.

### Defendant Scott actually drew that inference.

66. Defendant Scott drew this inference because he acknowledged when Defendant Hobbs relayed this information to him.

67. Further, Defendant Scott's actual knowledge of the substantial risk can be inferred because it was so obvious, and the need was so apparent that even laymen would recognize that care is required - as Defendant Hobbs took Boykin's complaint that he could not breathe seriously enough to relay it to Defendant Scott and that complaint is extremely serious as people that can't breathe die. *Dyer,* 964 F.3d at 380; *Easter,* 467 F.3d at 463; *Domino,* 239 F.3d at 756; *Gobert,* 463 F.3d at 345. Thus, Defendant Scott drew the inference that a substantial risk of serious harm existed.

68. Accordingly, Defendant Scott was deliberately indifferent to Boykin's health and safety because Defendant Scott "refused to treat him ... or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" by not providing medical care or summoning medical care for Boykin. *Domino,* 239 F.3d at 756 (quoting *Johnson,* 759 F.2d at 1238).

69. As a direct result of the Defendants failing to provide medical care and attention to

Boykin, Boykin suffered physical injury, pain, mental anguish, and death for which Intervenor Plaintiff sues herein.

70. These injuries were not caused by any other means.

71. These Defendants were at all times acting under the color of law.

## B. Failure to Supervise and Train under 42 U.S.C. § 1983 in violation of Plaintiff's Eighth and Fourteenth Amendment rights.

72. Intervenor Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

73. In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cty.,* 571 F.3d 388,395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy,* 158 F.3d 908, 911-12 (5th Cir.1998).

74. "For an official to act with deliberate indifference; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith,* 158 F.3d at 912.).

75. Defendant Scott was at all times acting under the color of law.

76. Here, Defendant Scott failed to supervise Defendants Weaver and Hobbs.

77. First, it is clear that Defendant Scott was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and Defendant Scott actually drew the inference that a substantial risk of serious harm existed because Defendant Scott was aware that Boykin had just ran a long distance, couldn't breathe, and his officer - Defendant Hobbs - took the complaint that he couldn't breathe seriously enough to relay it to Defendant Scott when Defendant Scott arrived on scene.

78. However, despite this information, Defendant Scott instructed Defendant Weaver to transport Boykin to the jail instead of calling for medical attention or taking him directly to the hospital.

79. *As* a result, Defendant Scott was deliberately indifferent in failing to supervise Defendants Weaver and Hobbs.

80. *As* a result, his failure to supervise Defendants Weaver and Hobbs amounted to deliberate indifference.

81. Finally, there existed a causal link between Defendant Scott's failure to supervise and the violation of Boykin's rights. *Goodman,* 571 F.3d at 395 (quoting *Smith,* 158 F.3d at 912.).

82. Had Defendant Scott taken steps to ensure Defendants Weaver and/or Hobbs had provided Boykin with medical care instead of simply ignoring him as he complained of being unable to breathe in the backseat of Defendant Weaver's patrol car, Boykin would not have continued to suffer and ultimately died.

83. *As* a result, (1) Defendant Scott failed to supervise Defendants Weaver and Hobbs; (2) a causal link exists between the failure to supervise and the violation of Boykin's rights; and (3) the failure to supervise amounts to deliberate indifference." *Goodman,* 571 F.3d at 395 (quoting *Smith,* 158 F.3d at 911-12).

## VI.  DAMAGES ALL DEFENDANTS

84. **Actual damages.** Intervenor Plaintiff incorporates by reference paragraphs 1 through 83 as if fully set forth herein. Defendants' acts and/or omissions were a proximate cause of the following actual damages suffered by Intervenor Plaintiff, and Defendants should be held jointly and severally liable for the following damages:

    1. Mental anguish—the emotional pain, torment, and suffering experienced by Intervenor Plaintiff because of the death of Darren Boykin—that Intervenor

        Plaintiff sustained in the past and that he will, in reasonable probability, sustain in the future;

2. Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that Intervenor Plaintiff would have received from Darren Boykin had he lived—that Intervenor Plaintiff sustained in the past and that he will, in reasonable probability, sustain in the future;

3. Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that Intervenor Plaintiff would have received from Darren Boykin had he lived—that Intervenor Plaintiff sustained in the past and that he will, in reasonable probability will sustain in the future.

4. Pre- and post-judgment interest at the highest rate permitted by State and Federal law.

85. **Punitive/Exemplary Damages against Defendants Weaver, Scott, and Hobbs.** Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. Here, the conduct of Defendants Weaver, Scott and Hobbs was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of Boykin. As such, Intervenor Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future.

86. Intervenor Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII. COSTS AND ATTORNEY FEES

87. Intervenor Plaintiff incorporates by reference paragraphs 1 through 85 as if fully set forth herein. Intervenor Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b). As such, Intervenor Plaintiff requests the Court to award costs and attorney fees incurred in Intervenor Plaintiff's prosecution of this litigation.

## VIII.   CONDITIONS PRECEDENT

88. Intervenor Plaintiff reserves his rights to plead and prove the damages to which he is entitled to at the time of trial. All conditions to Intervenor Plaintiff's recovery have been performed or have occurred.

## IX.   TRIAL BY JURY

89. Intervenor Plaintiff has paid a jury fee and demands trial by jury.

## X.   PRAYER

90. For these reasons, Intervenor Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Intervenor Plaintiff has and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Intervenor Plaintiff may show he is justly entitled.

Respectfully submitted,

By: /s/ Daryl K. Washington
Daryl K. Washington
State Bar No. 24013714
dwashington@dwashlawfirm.com
**WASHINGTON LAW FIRM, PC**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214-880-4883
214-751-6685 – fax

**ATTORNEYS FOR INTERVENOR PLAINTIFF DARREN BOYKIN**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 9, 2021, the foregoing pleading was filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

                                              /s/ Daryl K. Washington  
                                              DARYL K. WASHINGTON