# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| KEISHA BOYKIN, Individually and on Behalf of the Estate of Darren Boykin, and PARIS THORPE, as Next Friend of A.B., Plaintiffs, | § § § § § | Case No. 05:21-cv–106-RWS-CMC |
| DARREN BOYKIN, Individually, Intervenor Plaintiff, | § § § | |
| v. | § § | |
| JERRIKA WEAVER, BRENT HOBBS, and WILLIAM SCOTT, Defendants. | § § § | JURY TRIAL DEMANDED |

## ORIGINAL ANSWER OF DEFENDANT, JERRIKA WEAVER, TO INTERVENOR'S AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Defendant, Jerrika Weaver, responds to the Intervenor's Amended Original Complaint and would show as follows:

## I. NATURE OF THE CASE

1.       Jerrika Weaver ("Weaver") denies the allegations of fact and legal conclusions found in paragraph 1 of the "Nature of the Case" of Intervenor's Amended Original Complaint. Weaver specifically denies the allegations that her conduct violated Darren Boykin's ("Boykin") individual rights under the Eighth or Fourteenth Amendments of the United States Constitution, denies that she was deliberately indifferent and denies that her conduct amounted to cruel and unusual punishment.

2.       Weaver denies that she or the other officers were deliberately indifferent to Boykin's medical needs.  Weaver denies that she or the other officers refused to treat Boykin.

Weaver was not aware of facts from which every reasonable officer under the same circumstances would have drawn the inference that a substantial risk of serious harm existed either at the scene or during the transport of Boykin to the county jail. Further, at no time did Weaver actually draw that inference. Weaver denies the remaining fact allegations found in paragraph 2 of Intervenor's Amended Original Complaint.

## II. PARTIES

3. Weaver is without sufficient information or knowledge to form a reasonable belief whether Intervenor Boykin is a citizen of the United States or resident of Montgomery County, Ohio. Weaver is further without sufficient information or knowledge to form a reasonable belief whether Intervenor Boykin is the biological father of Darren Boykin. Weaver is further without sufficient information or knowledge to form a reasonable belief on the legal conclusions regarding whether Intervenor has standing to bring this lawsuit in his individual capacity or on behalf of all other alleged wrongful death beneficiaries of Boykin.

4. Weaver admits that she is a resident of Bowie County, Texas. Weaver admits she has appeared and no service is required.

5. Paragraph 5 of Intervenor's Amended Original Complaint does not address Weaver. Thus, no answer is required.

6. Paragraph 6 of Intervenor's Amended Original Complaint does not address Weaver. Thus, no answer is required.

## III. JURISDICTION AND VENUE

7. Weaver admits that this Court has subject matter jurisdiction. Weaver denies that she violated any rights, privileges and immunities of Boykin.

8. Weaver admits that venue is proper in this Court.

## IV.  FACTS AND ALLEGATIONS

9.      Based on information and belief, Weaver admits that, on August 29, 2019, Boykin was fleeing on foot from officers of the Texarkana College Police Department ("TCPD") who believed Boykin had committed multiple criminal offenses on the campus of the college, including theft.  Weaver admits that the TCPD officers reportedly chased Boykin for approximately one-half (1/2) mile and that the weather was hot.  Weaver is without sufficient knowledge or information to admit or deny whether Boykin was armed during the chase or not, or whether Boykin had any intent to harm others.

10.     Weaver admits that officers of the TCPD handcuffed, detained and arrested Boykin. Weaver admits that Texarkana Police Department officers arrived after Boykin's arrest, and that TCPD requested Weaver to transport Boykin to the jail.  Weaver denies the remaining allegations in paragraph 10 of Intervenor's Amended Original Complaint.

11.     Weaver denies that, after handcuffing, Boykin was not allowed to position himself on the ground before he was placed into the patrol unit.  Weaver reasonably believed that Boykin was physically tired after having fled on foot for approximately one-half (1/2) mile from pursuing TCPD officers.  Neither Weaver nor the other defendants had a reasonable belief that Boykin was in obvious and serious medical distress while at the scene.  For this reason, Weaver admits that she did not request medical assistance to evaluate Boykin.  Weaver denies the remaining allegations in paragraph 10 of Intervenor's Amended Original Complaint.

12.     Weaver admits that she assisted the TCPD officers in moving Boykin to her patrol unit, but denies the remaining allegations in paragraph 11 of Intervenor's Amended Original Complaint.  At no time did Weaver or the other defendants have a reasonable belief that Boykin was in obvious and serious medical distress while at the scene.

13.     Weaver admits that she assisted the TCPD officers in moving Boykin to her patrol unit.   Weaver admits that she held Boykin by the right arm, a TCPD officer held Boykin by the left arm, and another TCPD officer picked up Boykin's feet to move him to Weaver's patrol unit to be transported to the jail.  Boykin was partially carried to Weaver's patrol unit and Boykin then entered the patrol unit on his own.  Weaver admits Boykin said his leg hurt shortly before leaving the scene enroute to the jail.   Weaver and the other defendants reasonably believed that Boykin was physically tired and sore after having fled on foot for approximately one-half (1/2) mile from pursuing TCPD officers.

14.     Weaver admits that Defendant Hobbs arrived at the scene after Boykin had been placed in Weaver's patrol unit.  Weaver admits that Defendant Hobbs did get TCPD Officer Altamirano a bottle of water.  Weaver denies that her patrol unit was hot when Boykin was placed inside.  Rather, the air conditioning was on in her patrol unit and Defendant Hobbs increased the air condition setting to maximum.   The remaining allegations found in paragraph 14 do not address Weaver.  To the extent an answer is required, said allegations are denied.

15.     Weaver denies that her patrol unit was hot.  Rather, the air conditioning was on in her patrol unit and Defendant Hobbs increased the air condition setting to maximum.    Weaver admits that Defendant Hobbs heard a muffled sound from the patrol unit.  Weaver denies that Defendant Hobbs believed Boykin was in any kind of medical distress.

16.     Weaver admits that Defendant Hobbs opened the door of the patrol unit, that Boykin said that he could not breathe, and that Defendant Hobbs acknowledged these facts in his written report.  Weaver further admits that Defendant Hobbs did not provide Boykin with water at that time, but did adjust the air conditioning in Weaver's patrol unit onto the maximum setting. Weaver admits that Defendant Hobbs did not radio for medical assistance for the reason that

Boykin did not appear to be in any obvious and serious medical distress to Defendant Hobbs or any of the other officers, including the TCPD officers that arrested Boykin, at the scene. The remaining allegations found in paragraph 16 of Intervenor's Amended Original Complaint do not address Weaver. To the extent an answer is required, Weaver reasonably assumed that Defendant Hobbs believed Boykin was complaining of being out of breath because he was physically tired and sore after having fled for approximately one-half (1/2) mile from pursuing TCPD officers. Further, Weaver denies the remaining allegations in paragraph 16 of Intervenor's Amended Original Complaint.

17. Weaver admits that Defendant Hobbs, at some point, advised her that Boykin complained he was out of breath. Boykin did not appear to be in any obvious and serious medical distress to Weaver, the other defendants or the TCPD officers at the scene. Weaver reasonably assumed Boykin was complaining of being out of breath because he was physically tired after having fled for approximately one-half (1/2) mile from pursuing TCPD officers. Based on Weaver's training and police experience when chasing criminal suspects, it is not unusual for both the suspect and police officer to be out of breath and appear physically exhausted. Weaver admits that she said, at some point in time, "he'll be fine." Weaver denies the remaining allegations in paragraph 17 of Intervenor's Amended Original Complaint.

18. Weaver admits that she made the comment "you can't call I can't breathe after you ran and then you have felonies" but such was not a statement of deliberate indifference or deliberate disregard. At that time Weaver did not know Boykin was in medical distress. Based on Weaver's training and police experience when chasing criminal suspects, it is not unusual for both the suspect and police officer to be out of breath and appear physically exhausted. That is how Weaver perceived Boykin's condition at the scene and while transporting him to the county

jail.

19.     Weaver admits that after fleeing from the TCPD officers for approximately one-half (1/2) mile in the August heat, at the scene Boykin stated, "I can't breathe."  Weaver admits she did not call for medical attention because she did not observe any sign that Boykin was in obvious and serious medical distress.  Weaver reasonably believed that Boykin was physically exhausted having run away from the pursuing TCPD Officer, Gisela Altamirano, for one-half (1/2) mile in the August heat.

20.     Paragraph 20 of Intervenor's Amended Original Complaint does not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver admits that Defendant Hobbs told Defendant Scott, after his arrival at the scene of the arrest, that Boykin said he could not breathe and further advised Defendant Scott that Boykin was complaining of being out of breath because he was physically tired after having fled for approximately one-half (1/2) mile from pursuing the pursuing TCPD Officer, Gisela Altamirano.  Weaver denies the remaining allegations in paragraph 20 of Intervenor's Amended Original Complaint.

21.     Paragraph 21 of Intervenor's Amended Original Complaint does not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver admits that as the supervisor on the scene, Defendant Scott had the ability to call for medical attention or direct Hobbs or Weaver to call for medical assistance for Boykin but did not do so because Scott reasonably believed, as did Hobbs, Weaver and the TCPD officers, that Boykin did not appear to be in any obvious and serious medical distress at the scene.  Weaver denies that Defendant Scott directed her to transport Boykin to the jail; however, Weaver admits that Defendant Scott did permit her to transport Boykin to the jail.

22.     Weaver admits that she had the ability to call for medical assistance and would have

done so had she perceived, visually or audibly, that Boykin was in obvious and serious medical distress. Based on the facts available to Weaver, she reasonably concluded, as did Scott, Hobbs and the TCPD officers, that Boykin's complaints that he could not breathe were related to him being physically tired after fleeing from the TCPD officers for approximately one-half (1/2) mile in the August heat, and not from a serious medical issue. Weaver admits that she transported Boykin to the jail.

24.    Weaver admits that prior to leaving the scene, Boykin stated, "I can't breathe." Weaver admits that Boykin again made the same comment while Weaver was transporting him the county jail.

24.    Weaver admits she heard Boykin say he was going to pass out and could not talk. At that moment, Weaver had not perceived any sign, visually or audibly, that indicated Boykin was in obvious and serious medical distress. Rather, Weaver reasonably concluded that Boykin was physically tired having run away from the TCPD officers for approximately one-half (1/2) mile in the August heat.

25.    Weaver denies that she responded in a callous manner when she said, "just lean against the glass." Weaver admits that she heard Boykin say he was going to pass out and could not talk. At that moment, Weaver had not perceived any sign, visually or audibly, that indicated Boykin was in obvious and serious medical distress. Rather, Weaver reasonably concluded that Boykin was physically tired having run away from the TCPD officers for approximately one-half (1/2) mile in the August heat. Based on Weaver's training and professional experience, it is not uncommon for suspects who have run away from police officers for approximately one-half (1/2) mile in the August heat to appear physically tired and complain that they cannot breathe.

26.    Weaver admits that she did not call for medical attention or drive to the hospital

while transporting Boykin to the county jail.

27.     Weaver denies that she knew Boykin was unable to walk or speak.  Weaver admits that she told Boykin to lean his head against the window.  Weaver admits that she did not call for medical attention or go to the hospital because she did not perceive any sign, visually or audibly, that indicated that Boykin was in obvious and serious medical distress.  Rather, at all times Weaver reasonably believed that Boykin was physically tired after having run away from the TCPD officers for approximately one-half (1/2) mile in the August heat.  During the transport of Boykin to the county jail, when Boykin did not respond to her questions, Weaver reasonably believed Boykin was physically tired, knew he was going to jail and was being silent.  It was not until after she parked her patrol unit, opened the passenger door and asked Boykin to get out, did she realize Boykin was non-responsive.

28.     Weaver admits that at some point Boykin leaned to the left.  Weaver admits she could not see Boykin's face while driving, briefly looked over her shoulder and could only see one side of his face.  Weaver admits she thought Boykin was physically tired, knew he was going to jail, was being silent and leaning against the window.

29.     Weaver denies fact allegations in paragraph 29 of Intervenor's Amended Original Complaint.

30.     Weaver admits that she asked Boykin if he was comfortable and that Boykin did not respond.  Weaver denies that she was showing disregard for human life.  Weaver denies that she did not view Boykin as a human being.  Weaver denies that she perceived, visually or audibly, that Boykin was in obvious and serious medical distress.  Rather, Weaver reasonably believed Boykin was physically tired, knew he was going to jail, was being silent and leaning against the window.

31.     Weaver admits that she asked Boykin if he was getting air in the backseat and that Boykin did not respond.  Weaver reasonably believed Boykin was physically tired, knew he was going to jail, was being silent and leaning against the window.  Weaver denies that it was obvious to her that Boykin was unconscious and in serious need of medical help.  Weaver admits that she made the statement "somebody who passes out isn't able to stop themself from falling forward, fun fact."  Weaver denies it was obvious that Boykin needed medical attention.  Weaver denies that she intended to deny Boykin medical assistance due to the fact that he was wanted for felonies.  The remaining allegations in paragraph 31 of Intervenor's Amended Original Complaint are denied.

32.     Weaver admits that she drove past Wadley Regional Medical Center while transporting Boykin to the county jail.  Weaver admits that at several times, she saw Boykin's body sway from side to side, heard him speak and respond to her questions.  Weaver admits that once Boykin leaned against the glass window, she could no longer see his entire face.

33.     Weaver denies the fact allegations in the first sentence of paragraph 33 of Intervenor's Amended Original Complaint.  Weaver admits that when they arrived at the county jail, she opened the door, spoke to Boykin expecting him to respond and that he did not respond.

34.     Weaver admits that she tried waking Boykin using a sternum rub, but he did not respond.  Weaver admits that she then removed Boykin from the patrol unit, placed him on the ground, called to Defendant Scott for help and began performing CPR.  Weaver admits that Boykin was still handcuffed at this time but the handcuffs were removed a short time later.  Weaver admits that Defendant Scott assisted with CPR.  Weaver denies that she performed CPR in an improper manner.

35.     Weaver admits requesting medical assistance from LifeNet and the fire department.

Weaver denies that her conduct at the scene or while transporting Boykin to the county jail demonstrates deliberate indifference to an obvious and serious medical need. Weaver denies that she drew the inference that Boykin was in obvious and serious medical distress. Rather, Weaver, along with the other defendants and the TCPD officers who arrested Boykin, did not observe anything, visually or audibly, that would indicate Boykin was in obvious and serious medical distress at the scene. Weaver reasonably concluded that Boykin was saying he could not breathe because he was physically tired after running away from TCPD officers for approximately one-half (1/2) mile in the August heat. This was consistent with Weaver's past professional police experience of chasing and catching suspects who fled on foot.

36.     Weaver denies the fact allegations and legal conclusions found in paragraph 36 of Intervenor's Amended Original Complaint. Weaver, Hobbs, Scott and the TCPD officers who arrested Boykin, did not observe anything, visually or audibly, that indicated Boykin was in obvious and serious medical distress at the scene. Rather, Weaver reasonably concluded Boykin was saying he could not breathe because he was physically tired after running away from TCPD officers for approximately one-half (1/2) mile in the August heat. This was consistent with Weaver's past professional police experience of chasing and catching suspects who fled on foot.

37.     Weaver denies the fact allegations and legal conclusions found in paragraph 37 of Intervenor's Amended Original Complaint. Weaver did not observe anything, visually or audibly, that indicated Boykin was in obvious and serious medical distress during transport. Weaver admits she did not perceive any sign, visually or audibly, that indicated Boykin was in obvious and serious medical distress. Rather, Weaver reasonably concluded Boykin was saying he could not breathe because he was physically tired after running away from TCPD officers for approximately one-half (1/2) mile in the August heat. Weaver admits she could not see Boykin's face while driving,

briefly looked over her shoulder and could only see one side of his face. Weaver admits she thought Boykin was physically tired, knew he was going to jail, was being silent and was leaning against the window.

38.     Weaver denies the fact allegations and legal conclusions found in paragraph 38 of Intervenor's Amended Original Complaint. Weaver admits she did not perceive any sign, visually or audibly, that indicated Boykin was in obvious and serious medical distress. Rather, Weaver reasonably concluded Boykin was saying he could not breathe because he was physically tired after running away from TCPD officers for approximately one-half (1/2) mile in the August heat. Weaver admits she could not see Boykin's face while driving, briefly looked over her shoulder and could only see one side of his face. Weaver admits she reasonably believed Boykin was physically tired, knew he was going to jail, was being silent and leaning against the window. It was not until after Weaver arrived at the county jail, parked her car, opened the passenger door and asked Boykin to get out that she realized Boykin was non-responsive.

39.     Weaver admits that Boykin was ultimately transported by LifeNet to Wadley Regional Medical Center. However, Weaver denies that she passed the hospital while transporting Boykin with knowledge that Boykin's health was deteriorating or that he was in obvious and serious medical distress. Weaver denies that her comment, "he said he was going to pass out but he is also being charged with a bunch of felonies so it's one of those things" was a statement of deliberate indifference or deliberate disregard. At that time, Weaver did not know Boykin was in medical distress. Based on Weaver's training and police experience when chasing criminal suspects, it is not unusual for the suspect and the police officer to be out of breath and appear physically exhausted. Weaver admits that at several times while transporting Boykin to the county jail, she saw Boykin's body sway from side to side and heard him speak and respond to her

questions. Weaver admits that she could not see Boykin's face while driving and at times when she briefly looked over her shoulder, she could only see one side of his face. Weaver admits she thought Boykin was physically tired, knew he was going to jail, was being silent and leaning against the window.

40. Weaver admits that Boykin passed away, but denies the remaining fact allegations and legal conclusions found in paragraph 40 of Intervenor's Amended Original Complaint.

41. Weaver admits that Boykin's cause of death was natural causes, as determined by the medical examiner. Weaver denies the remaining fact allegations and legal conclusions in paragraph 41 of Intervenor's Amended Original Complaint.

42. Weaver admits that the United States Supreme Court has opined regarding the obligation to provide adequate medical care to detainees and prisoners. Weaver denies, however, that Intervenor has accurately or completely stated the constitutional obligations to pre-trial detainees. To the extent it is intended to allege or suggest that Weaver was deliberately indifferent to a substantial risk of medical harm or that she actually drew that inference, then such allegation or inference is denied.

43. Weaver denies the fact allegations and legal conclusions found in paragraph 43 of Intervenor's Amended Original Complaint.

44. Weaver denies the fact allegations and legal conclusions found in paragraph 44 of Intervenor's Amended Original Complaint.

45. Weaver denies the fact allegations and legal conclusions found in paragraph 45 of Intervenor's Amended Original Complaint.

## V. CAUSES OF ACTION

### Count 1

46.     Weaver restates her answers from paragraphs 1-45 as though fully pled herein. Weaver denies the remaining allegations and legal conclusions found in paragraph 46 of Intervenor's Amended Original Complaint.

47.     Weaver admits Boykin stated at different times that he could not breathe.  Weaver, the co-defendants and the TCPD officers reasonably assumed Boykin was complaining of being out of breath because he was physically tired after having fled for approximately one-half (1/2) mile from pursuing TCPD officers.  Weaver, the co-defendants and the TCPD officers did not have a reasonable belief that Boykin was in obvious and serious medical distress while at the scene. Weaver denies the remaining fact allegations and legal conclusions in paragraph 47 of Intervenor's Amended Original Complaint.

48.     Weaver denies the legal conclusions as pled in paragraph 48 of Intervenor's Amended Original Complaint with regard to the specific facts of this case.  Weaver denies that she and/or the co-defendants were deliberately indifferent to a substantial risk of medical harm to Boykin or that they actually drew that inference.  Weaver denies the remaining fact allegations and legal conclusions in paragraph 48 of Intervenor's Amended Original Complaint.

49.     Paragraph 49 of Intervenor's Amended Original Complaint does not allege facts but rather Intervenor's interpretation of the law.  To the extent an answer is required, Weaver would show that paragraph 49 of the Amended Original Complaint correctly quotes a sentence from *Dyer v. Houston*, 959 F.3d 501, 506 (5th Cir. 2020).

50.     With regard to the first sentence of paragraph 50, Weaver denies the legal conclusion with regard to the specific facts of this case.  With regard to the second sentence of

paragraph 50, Weaver admits that refusing to treat a prisoner's complaint under certain circumstances can give rise to § 1983 liability. With regard to the third sentence of paragraph 50, Weaver admits that episodic acts or omissions can, under certain circumstances, fault specific officials for their acts or omissions. To the extent it is intended to allege or suggest that Weaver or the co-defendants were deliberately indifferent to a substantial risk of medical harm or that they actually drew that inference, then such allegations or inferences are denied.

51. Paragraph 51 does not allege fact but rather states a legal conclusion and/or Intervenor's interpretation of the law. Thus, no answer is required. To the extent an answer is required, and with regard to the specific facts of this case, Weaver disagrees with Intervenor's legal conclusions.

52. Paragraph 52 does not allege fact but rather states a legal conclusion and/or Intervenor's interpretation of the law. Thus, no answer is required. To the extent an answer is required, and with regard to the specific facts of this case, Weaver disagrees with Intervenor's legal conclusions.

53. Weaver denies the fact allegations and legal conclusions found in paragraph 53 of Intervenor's Amended Original Complaint.

54. Weaver denies the fact allegations and legal conclusions found in paragraph 54 of Intervenor's Amended Original Complaint.

**Defendant Weaver**

55. Weaver denies the fact allegations and legal conclusions found in paragraph 55 of Intervenor's Amended Original Complaint.

56. Weaver denies the fact allegations and legal conclusions found in paragraph 56 of Intervenor's Amended Original Complaint.

57.     Weaver denies the fact allegations and legal conclusions found in paragraph 57 of Intervenor's Amended Original Complaint.

58.     Weaver denies the fact allegations and legal conclusions found in paragraph 58 of Intervenor's Amended Original Complaint.

**Defendant Hobbs**

59.     The allegations in paragraph 59 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

60.     The allegations in paragraph 60 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

61.     The allegations in paragraph 61 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

62.     The allegations in paragraph 62 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

63.     The allegations in paragraph 63 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

**Defendant Scott**

64.     The allegations in paragraph 64 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver

denies the same.

65.     The allegations in paragraph 65 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

66.     The allegations in paragraph 66 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

67.     The allegations in paragraph 67 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

68.     The allegations in paragraph 68 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

69.     The allegations in paragraph 69 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

70.     The allegations in paragraph 70 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

71.     The allegations in paragraph 71 of Intervenor's Amended Original Complaint do not address Weaver.  Thus, no answer is required.  To the extent an answer is required, Weaver denies the same.

**Count 2**

72.     Weaver restates her answers from paragraphs 1-71 as though fully pled herein.

73.     Paragraph 73 does not allege facts but rather Intervenor's interpretation of the law. To the extent an answer is required, Weaver would show that paragraph 73 correctly quotes a sentence from *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).

74.     Paragraph 74 does not allege facts but rather Intervenor's interpretation of the law. To the extent an answer is required, Weaver would show that paragraph 74 correctly quotes a sentence from *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).

75.     Weaver admits the allegation in paragraph 75 of Intervenor's Amended Original Complaint.

76.     Weaver denies the fact allegations and legal conclusions found in paragraph 76 of Intervenor's Amended Original Complaint.

77.     Weaver denies the fact allegations and legal conclusions found in paragraph 77 of Intervenor's Amended Original Complaint.

78.     Weaver admits that Defendant Scott permitted Weaver to transport Boykin to the jail.  Weaver denies that Defendant Scott was deliberately indifferent or that he was aware of facts from which the inference could be drawn that a substantial risk of serious medical harm existed as to Boykin or that he actually drew that inference.  Weaver would show that based on the limited facts available to Defendant Scott, he reasonably concluded that Boykin's complaints that he could not breathe were related to him being physically tired after fleeing from TCPD officers for approximately one-half (1/2) mile in the August heat.

79.     Weaver denies the fact allegations and legal conclusions found in paragraph 79 of Intervenor's Amended Original Complaint.

80.     Weaver denies the fact allegations and legal conclusions found in paragraph 80 of Intervenor's Amended Original Complaint.

81.     Weaver denies the fact allegations and legal conclusions found in paragraph 81 of Intervenor's Amended Original Complaint.

82.     Weaver denies the fact allegations and legal conclusions found in paragraph 82 of Intervenor's Amended Original Complaint.

83.     Weaver denies the fact allegations and legal conclusions found in paragraph 83 of Intervenor's Amended Original Complaint.

## VI.  DAMAGES ALL DEFENDANTS

84.     Weaver restates her answers from paragraphs 1-83 as though fully pled herein. Thereafter, Weaver denies the fact allegations and legal conclusions found in paragraphs 84(1-4) of Intervenor's Amended Original Complaint.

85.     Weaver denies the fact allegations and legal conclusions found in paragraph 85 of Intervenor's Amended Original Complaint.

86.     Weaver denies the fact allegations and legal conclusions found in paragraph 86 of Intervenor's Amended Original Complaint.

## VII.  COSTS AND ATTORNEY FEES

87.     Weaver restates her answers from paragraphs 1-86 as though fully pled herein. Thereafter, Weaver denies the fact allegations and legal conclusions found in paragraph 87 of Intervenor's Amended Original Complaint.

## VIII.  CONDITIONS PRECEDENT

88.     Paragraph 88 does not allege fact but rather states a legal conclusion or Intervenor's interpretation of the law and his rights to replead.  Thus, no answer is required.  To the extent an

answer is required, Weaver disagrees with Intervenor's legal conclusions.

## IX.  TRIAL BY JURY

89.     Weaver acknowledges that Intervenor has requested trial by jury as alleged in paragraph 89 of Intervenor's Amended Original Complaint.

## X.  INTERVENOR'S PRAYER

90.     Weaver denies that Intervenor is entitled to the relief sought in the Prayer of his Amended Original Complaint.

## XI.  AFFIRMATIVE DEFENSES

91.     Weaver denies she violated 42 U.S.C. § 1983, Boykin's constitutional rights, and any common law cited by the Intervenor.

92.     Weaver would show the Intervenor has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

93.     Weaver denies that Boykin was denied substantive or procedural due process under the Constitution and laws of the United States.

94.     Weaver denies that she or the co-defendants acted with deliberate indifference to an obvious and serious medical need while Boykin was in their custody at the scene or while being transported to the county jail at the request of the arresting Texarkana College police officers.  In particular, Weaver and the co-defendants did not refuse to treat Boykin, ignore his complaints, intentionally treat him incorrectly or engage in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs.

95.     Weaver invokes her qualified immunity from prosecution and liability for any claims brought by the Intervenor under 42 U.S.C. § 1983.  Weaver is entitled to qualified immunity "unless *all* reasonable officials in the defendant's circumstances would have known that the

defendant's conduct violated the United States Constitution." *Linicomn v. Hill*, 902 F.3d 929, 938-939 (5th Cir. 2018) citing *Thompson v. Upshur County*, 345 F.3d 447, 457 (5th Cir. 2001). This determination is a question of law for the Court and not a matter of fact for the jury. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). In particular, not every reasonable officer under the same or similar circumstances would have been aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, either at the scene or while Weaver was transporting Boykin to the county jail. Further, Weaver did not draw such inference nor would any reasonable officer under the same or similar circumstances.

96.     Weaver affirmatively pleads and invokes all statutory and common law damage caps with respect to Intervenor's alleged damages.

97.     Weaver denies that there is a direct causal link between her conduct or any delay in providing medical attention, and the death of Boykin.

98.     Weaver asserts all defenses, limitations on liability, protections and immunities afforded under the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.001 et. seq. to the extent that Intervenor has alleged or will allege any state law claims.

99.     Weaver affirmatively pleads that Intervenor's claims and causes of action are barred, in whole or in part, by the applicable statute of limitation. Weaver specifically asserts that she did not have actual knowledge of the alleged facts giving rise to Intervenor's causes of action; that she did not conceal any of her conduct; and that Intervenor did not exercise reasonable diligence in discovering the facts.

## XII.  JURY DEMAND

100.     Weaver hereby demands a trial by jury as to all matters asserted in the Intervenor's Amended Original Complaint or any amendments thereto, and all matters asserted in this Answer

or any amendment thereto.

WHEREFORE, PREMISES CONSIDERED, Defendant, Jerrika Weaver, prays that Intervenor take nothing by his action and that this Defendant recover her costs and such other and further relief to which she may be entitled.

Respectfully submitted,

By: /s/ *Robert W. Weber*
**Robert W. Weber**, *Lead Attorney*
Texas State Bar No. 21044800
E-mail: bweber@smithweber.com

**SMITH WEBER, L.L.P.**
5505 Plaza Drive
Texarkana, TX 75503
Telephone: 903-223-5656
Facsimile: 903-223-5652

**ATTORNEYS FOR DEFENDANT,
JERRIKA WEAVER**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing has been forwarded to all counsel of record on this the 5th day of November 2021, via CM/ECF:

/s/ *Robert W. Weber*
Robert W. Weber