# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | | |
|---|---|---|
| PARIS THORPE, as Next Friend of A.B. and on Behalf of the Estate of Darren Boykin, §§§§§ | | |
| *Plaintiff*, § | Case No. 05:21-cv–106-RWS-JBB | |
| § | | |
| DARREN BOYKIN, SR. Individually, § | | |
| *Intervenor Plaintiff*, § | | |
| § | | |
| v. § | | |
| § | | |
| JERRIKA WEAVER, BRENT HOBBS, § | JURY TRIAL DEMANDED | |
| and WILLIAM SCOTT, § | | |
| *Defendants*. § | | |

**DEFENDANTS' REPLY BRIEF TO INTERVENOR'S RESPONSE (DKT. 66) TO DEFENDANTS' FIRST MOTION FOR SUMMARY JUDGMENT (DKT. 59)**

TO THE HONORABLE COURT:

Defendants, Jerrika Weaver, Brent Hobbs and William Scott, file this Reply Brief to Intervenor Darren Boykin, Sr.'s Response (Dkt. 66) to Defendants' First Motion for Summary Judgment (Dkt. 59), and in support would show as follows:

**Reply Point 1 – Intervenor's "Relation Back" Argument Fails as a Matter of Law**

Intervenor attempts to avoid the effect of the statute of limitations by arguing that his intervention "relates back" to the Original Complaint filed by Keisha Boykin. *See* Response at 5. As shown below, the Original and Amended Complaints were not made or filed on behalf of Intervenor, and, therefore, Intervenor cannot escape the limitations bar.[1]

### a. Intervenor is NOT an Heir to the Estate of Darren Boykin, Jr.

Darren Boykin, Jr.'s heirs are determined by the law of intestate succession set out in

---

1 Intervenor's reference to Tex. Civ. Prac. & Rem. Code § 16.068 is inapplicable, as that provision deals only with amended and supplemental causes of action "not subject to a plea of limitations when the [original] pleading [was] filed." Here, Intervenor is not attempting to amend or supplement a cause of action; rather Intervenor is attempting to add himself as a party after the statute of limitations had run.

Chapter 201 of the Texas Estates Code. Pursuant to Texas Estates Code § 201.001(b), the estate of a person who dies intestate and does not leave a surviving spouse passes to the person's children and the children's descendants. As Darren Boykin, Jr. had only one child (minor A.B.), his entire estate passed to her, and she is the *sole* beneficiary of the estate, including the survival claim. (*See* Exhibits 13 and 14).[2] As such, Intervenor has *no* claim as an heir to the estate of Darren Boykin, Jr., including the survival cause of action.

### b. Neither Plaintiff Keisha Boykin, Nor Paris Thorpe (as Next Friend of minor, A.B.), Filed Suit on Behalf of Intervenor

Keisha Boykin filed her Original Complaint (Dkt. 1), individually and as representative of the Estate of Darren Boykin, Jr., Deceased, *without* any mention of Intervenor. Specifically, Keisha Boykin explicitly asserted *only* her wrongful death claim, and Paris Thorpe, as Next Friend of A.B., explicitly asserted the minor child's wrongful death claim. (Dkt. 7, p. 4) Further, and to the extent Intervenor claims or believes that the Original or Amended Complaints filed on behalf of "the estate" somehow included representation of him, Intervenor is mistaken. As set forth above, Intervenor is *not* a beneficiary of the estate of Darren Boykin, Jr. (in any manner), and was never included (by name or as an "heir" to the estate) in either the Original or Amended Complaints.

### c. Intervenor's "Relation Back" Argument Fails as a Matter of Law

Intervenor attempts to utilize Section 71.004(b) of the Texas Civil Practice and Remedies Code to piggyback onto the timely asserted, individual wrongful death claim of Keisha Boykin and the minor child. Under Section 71.004(b), one wrongful death beneficiary *may* (not "shall")

---

[2] As Plaintiff's Notice of Suggestion of Death (Dkt. 36, attached as Exhibit 15) makes clear, due to Keisha Boykin's declining health, Paris Thorpe applied for the determination of heirship. It is undisputed that A.B. was the decedent's minor daughter and sole heir. Thus, the survival claim of the Estate is for the sole benefit of A.B. Intervenor consented to Thorpe's application for heirship (see Exhibit 15, p. 2). Judgment was entered to such effect on May 22, 2022 (Ex. 14).

bring the action for the benefit of all. However, nowhere in the Original or Amended Complaint is any other beneficiary identified, specifically or by reference. Keisha Boykin and the minor child *did not* bring the action for the benefit of all wrongful death beneficiaries. As reflected in the Original Complaint, Keisha Boykin only brought the wrongful death claim for herself, and the survival claim for the estate (to which Intervenor is not an heir). In the Amended Complaint, *only* the wrongful death claim of minor A.B. was added.

Intervenor attempts to argue that, because one wrongful death beneficiary's claim was timely filed, then *all* wrongful death beneficiary's claims can relate back and, by extension, be timely filed. This is contrary to established Texas law. In *Ruiz v. Guerra*, 293 S.W.3d 706, 711 (Tex. App. – San Antonio 2009, no pet.), in an existing lawsuit, the Guerra family attempted to add cross-claims for wrongful death after the limitations period had run. One member of the Guerra family was a minor whose statute of limitations was tolled, and the Guerra family argued that the minor could assert wrongful death claims on behalf of all wrongful death beneficiaries (even those whose claims were time-barred) under Section 71.004(b). *Id*. at 715-16. In denying the tolling of limitations to the other family members, the Court noted:

> The Wrongful Death Act was enacted to create a cause of action allowing the surviving parents, children, and spouse of a deceased tort victim to recover damages for their *own* losses from the victim's death. TEX. CIV. PRAC. & REM. CODE ANN. §§ 71.002-.004 (Vernon 2008); *Labatt*, 279 S.W.3d 640, 2009 WL 353524, at *3. "[W]rongful death claimants have an individually owned statutory cause of action." *In re Golden Peanut Co., LLC*, 269 S.W.3d 302, 312 (Tex. App.--Eastland 2008, orig. proceeding [mand. pending]); see *In re McCoy*, 373 F.Supp. 870, 875 (W.D. Tex. 1974) (wrongful death statute is designed to compensate the statutory beneficiaries for their own losses resulting from the death of the deceased). Because each plaintiff in a wrongful death action *suffers a distinct, apportionable injury* due to a family member's death, see *Utts v. Short,* 81 S.W.3d 822, 835 (Tex. 2002), each plaintiff must prove his or her own entitlement to recover. See TEX. CIV. PRAC. & REM. CODE ANN. § 71.010(b) (Vernon 2008).

*Ruiz,* 293 S.W.3d at 716 (emphasis added). While some wrongful death beneficiaries (such as

minors) may receive the benefit of tolling, Section 71.004(b) does not "extend the minor Intervenor's tolling benefit to the other statutory beneficiaries." *Id.* at 716. "[T]he limitations period must be calculated for *each* wrongful death claimant, and some statutory beneficiaries may be barred while others receive the benefit of tolling." *Id*. (emphasis added). Further,

> Nothing within the plain language of section 71.004(b) suggests that it is intended to extend limitations or create an additional tolling exception for a wrongful death claimant. To the contrary, section 71.004(b) only deals with a statutory beneficiary's "standing" to bring a wrongful death action on behalf of the other statutory beneficiaries; it contains no reference to limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(b). "The [Texas Wrongful Death Act] contemplates that only one suit shall be brought, which shall be for the benefit of all parties entitled to recover." See *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 850 (Tex. App.--San Antonio 1997, writ denied) (requirement that all beneficiaries be parties was enacted chiefly to protect the defendant from multiple suits arising out of the same death). Accordingly, we agree that under section 71.004(b) any one statutory beneficiary can initiate a wrongful death action on behalf of the other beneficiaries. *However, nothing in the statutory language of section 71.004 can be interpreted to resurrect a wrongful death claim that is barred by limitations*.

*Ruiz*, 293 S.W.3d at 717 (emphasis added); *see also Cox v. McDonnell-Douglas Corp.*, 665 F.2d 566, 567 (5th Cir. 1982) (where widow and three minor children brought a wrongful death action eight years after the death, widow's claim was time-barred but children's claims were timely); *Tex. Utilities Co. v. West*, 59 S.W.2d 459, 460 (Tex. Civ. App. – Amarillo 1933, writ ref'd) (same). "The fact that one beneficiary has standing to bring a single suit on behalf of all has no bearing on whether the statute of limitations bars the individual claims of the other statutory beneficiaries." *Ruiz*, 293 S.W.3d at 717.

Intervenor relies on three (3) cases to support his relation back argument. However, these three (3) cases are inapposite to the issue at hand. First, in *Bradley v. Burnett*, 687 S.W.2d 53, 54 (Tex. App. – Dallas 1985, no writ), the intervenors asserting wrongful death claims had *timely* filed survival claims. The court allowed those *existing* Intervenors to add wrongful death claims because they arose out of the same transaction or occurrence as the survivor claims. *Id*. at 55.

Second, in *Tamez v. Mack Trucks, Inc.*, 100 S.W.3d 549, 565 (Tex. App. – Corpus Christi 2003), *rev'd on other grounds by Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572 (Tex. 2006), the court determined that the intervenor asserting the wrongful death claim was "simply intervening in a case that was *already filed on her behalf* by the other statutory beneficiaries."[3] (emphasis added) Accordingly, the court allowed the *existing* claims to be prosecuted by the intervenor instead of the other statutory beneficiaries. *Id*. Finally, *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 169 (5th Cir. 1991) involved a multi-intervenor asbestos lawsuit. When two workers died from asbestos exposure, after the suit was filed, their widows sought to add wrongful death claims to the pending personal injury claims. *Id*. at 173-74. The widows, who were *already Intervenors*, were allowed to add wrongful death claims because "it would be an unjust hardship on Intervenor not to permit them to amend their pleadings to include the wrongful death claim, when such an addition changed neither the factual allegations nor the legal theory of Intervenors' case." *Id*. at 174. Thus, in *each* case relied upon by Intervenor, *existing, timely Intervenors* were allowed to add wrongful death claims using the relation-back doctrine. Here, Intervenor has no existing, timely filed claims to which to relate back. Accordingly, Intervenor's claims are barred by the statute of limitations.

### **Reply Point 2 – The Accrual Date is Not Deferred as a Matter of Law**

Intervenor argues that the accrual date should be deferred under the application of the "federal discovery rule." While Intervenor is correct that ""federal courts look to federal law to determine when a civil rights action accrues", *Harris v. Hegmann,* 198 F.3d 153, 156-57 (5th Cir. 1999), Intervenor's argument that the accrual date should be deferred well over two (2) years is without factual or legal merit for two (2) independent reasons.

---

[3] The opposite has occurred in the case at hand: no one filed a wrongful death claim on behalf of Intervenor Boykin, Sr.

### a. The Accrual Standard

The correct accrual standard is laid out by the Fifth Circuit in *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995) ("Piotrowski I"):

> Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Russell v. Board of Trustees*, 968 F.2d 489, 493 (5th Cir.1992) (quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir.1987)), cert. denied, 507 U.S. 914, 113 S. Ct. 1266, 122 L. Ed. 2d 662 (1993). A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions. See *Stewart v. Parish of Jefferson*, 951 F.2d 681, 684 (5th Cir.) … A plaintiff need not realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim. See *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir.1983) ( "The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection ... or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury."). Moreover, a plaintiff need not have actual knowledge if the circumstances would lead a reasonable person to investigate further. See *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988). ("Under federal law, the limitations period commences when 'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof." (quoting *Vigman v. Community Nat'l Bank & Trust Co.*, 635 F.2d 455, 459 (5th Cir.1981))).

*Piotrowski I*, 51 F.3d at 516 (footnotes omitted).

### b. Intervenor Had Actual Knowledge

Without question, Intervenor was aware of the injury. Intervenor admits that he knew of the injury to his son when he learned of his death. (Intervenor's Response, p. 10) On the second element of awareness, Boykin Sr. knew the persons who allegedly inflicted the injury. Indeed, Intervenor called the Texas Ranger to obtain additional information on the custodial death. (Exhibit 1A, p. 2-3) Intervenor stated to Ranger Mason "I was informed that you were the deputy that's looking into the …uh…incident report with my son's death, Darren Boykin, Jr." (Exhibit 1A, p. 2) Ranger Manson acknowledged to Intervenor that he was investigating an "in custody"

death. (Exhibit 1A, p. 2) Ranger Mason also informed Intervenor that the matter would be presented to the Bowie County District Attorney. (Exhibit 1A, p. 2) Intervenor was also fully aware that a video existed of the incident and he asked how to obtain a copy. (Exhibit 1A, p. 3)

Intervenor had full knowledge of his son's death, that the death occurred in police custody, that the death was being investigated by Ranger Mason, and that the incident would be presented to the District Attorney's office. Intervenor had more than sufficient knowledge of both his injury (i.e. his son's passing) and the connection to the custodial officer(s). See *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983) ("The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury.") For these reasons, accrual is not deferred, and the statute of limitations began on the date of the incident and passing of Darren Boykin, Jr. - - August 29, 2019.

### c. Lack of Due Diligence

As set forth above, Intervenor had actual knowledge of the "injury" and the connection to the custodial officer(s). However, arguing in the alternative, even if Intervenor did not have actual knowledge, which is denied, then the failure to obtain such actual knowledge was due to the lack of due diligence on the part of Intervenor. Specifically, Ranger Mason Ranger Mason informed Boykin, Sr. how to obtain the investigative reports, autopsy report and videos from the scene of the arrest and his son's transport to the jail. (Exhibit 1A) Ranger Mason further informed Boykin, Sr. that he could file his open records request at any time, including the day of the conversation. (Exhibit 1A, p. 2) Boykin, Sr. informed Ranger Mason that he would call Ranger

Mason back in 2-3 weeks, but he never talked to Ranger Mason again. Boykin, Sr. unequivocally stated he knew "the procedure [he] needed to start looking at." (Exhibit 1A, p. 2) However, Boykin, Sr. has admitted that he never submitted an open records request to Ranger Mason, Texas DPS, Texarkana Texas Police Department, Texarkana College Police Department, or the Medical Examiner's office. (Exhibit 4, pp. 47, 69, 76, 105-108). Boykin, Sr. never asked Defendants Weaver, Hobbs or Scott for the videos or reports. (Exhibit 2; Exhibit 4, p. 104; Exhibit 9; Exhibit 10). Further, Boykin, Sr. candidly admitted that he did not contact the Scott Palmer Law Firm, the attorneys for Plaintiff Keisha Boykin, until days "after" the lawsuit was filed. (Exhibit 4, pp. 85, 86-87, 112).[4]

In his Response, Intervenor offers no explanations for his total lack of action in investigating the claim or obtaining public reports and videos.[5] As to the open records requests, Intervenor speculates that "there is no evidence that the arrest video would have been produced". Intervenor never made an open records request which, by law, *must* be promptly addressed by the responding governmental entity. Intervenor further speculates that the videos may not have produced "with any kind of legal certainty." (Response, p. 13) The reality is that Intervenor did absolutely nothing to investigate the incident. After being given precise instruction on how to obtain the public reports, records, and videos, Intervenor "[slept] on [his] rights". *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989). Keisha Boykin, on the other hand, investigated her claim with diligence, retained an attorney, and timely filed her civil action against Defendants. Due to Intervenor's lack of due diligence, the statute of limitations began on the date

---

4 Intervenor states, with regard to contacting Keisha's lawyers, "Defendants fail to show that any such conduct was required by Boykin, Sr. or that it would have born any fruit". (Response, p. 13) This, of course, is pure speculation on the part of Intervenor and demonstrates Intervenor's lack of due diligence.
5 Intervenor mistakenly relies upon *Riley v. Sheely,* No. 4:09cv425, 2010 WL 1537154 (E.D. Tex. March 25, 2010). In *Riley*, the district court was ruling on a Rule 12(b)(6) motion to dismiss. The district court only found that the plaintiff's pleading was sufficient and declined to grant judgment on the pleadings. The district court did not make any ruling on the merits.

of the incident and passing of Darren Boykin, Jr. - - August 29, 2019.

**Reply Point 3 – <u>Intervenor's Fraudulent Concealment Claim Fails as a Matter of Law for Insufficient Pleading and Lack of Evidence</u>**

In section "C" of his Response (p. 10), Intervenor claims that "investigative agencies" fraudulently concealed "the cause of Boykin, Jr.'s death".[6] First, the "investigative agencies" are not defendants in this civil action. Intervenor has not only failed to plead that Defendants concealed anything (Dkt. 21, p. 9), Intervenor also failed to present *any* evidence that Defendants concealed any report or video. Intervenor makes the argument that Defendants conspired with the "investigating agencies", but failed to provide any factual support or evidence. Second, contrary to Intervenor's statement (Response, p. 11-12), the doctrine of fraudulent concealment is an equitable remedy that requires the exercise of due diligence by a plaintiff/intervenor. *See Berry v. Allstate Ins. Co.,* 252 F. Supp. 2d 336 (E.D. Tex. 2003). As briefed in Defendant First Motion for Summary Judgment, Intervenor failed to exercise due diligence. For these reasons, Intervenor's fraudulent concealment argument fails as a matter of law.

**IV.
<u>Objections to Certain Statements in Intervenor's Response</u>**

Defendants object to the following statements in Intervenor's Response as improper summary judgment evidence as contemplated by Local Rule CV-56(d):

- "These agencies (TTPD, Texas Ranger Division of the TxDPS and the medical examiner) never released the videos of Boykin's [Jr.] arrest until just at or very near the time limitations expired." (Dkt. 66, p. 3)

Boykin, Sr. provides no evidentiary support for this statement.

- "After speaking with Ranger Mason, Boykin, Sr. provided what he had been told to his

---

6 Intervenor's argument of passive v. active is a difference without any significance. See *Avance v. Kerr-Mcgee Chem. LLC*, No. 5:04CV209, 2006 U.S. Dist. LEXIS 94939 (E.D. Tex. Dec. 14, 2006)("the Court notes that in *Bridges v. Metabolife International, Inc.,* 119 Fed. Appx. 660, 2005 WL 65498 (5th Cir. 2005), the Fifth Circuit did not distinguish between active and passive fraud."

ex-wife and Boykin, Jr.'s mother, Keisha Boykin, who then agreed to take the lead on asking for the videos and making an open records request." (Dkt. 66, p. 4)

This statement is hearsay under FRE 801 as to what Keisha Boykin agreed to do and is unsupported by other proper summary judgment evidence.

- "However, Mr. Mason never reached back out to Keisha (Boykin)." (Dkt. 66, p. 4)

This statement is hearsay under FRE 801 as to what, if any, communication Mason had with Keisha Boykin.

- "Here, Defendants knew of the wrong. The officers knew they caused, at least in part, or if not in whole, the death of Boykin, Jr. because they were directly involved and deliberately indifferent to his condition and cries for help." (Dkt. 66, p. 12)

There is no proper summary judgment evidence to support this statement. Further, it is inadmissible as calling for speculation as to what the officers knew.

- "[T]hey (the Defendants) actively concealed it [the video] when they allowed their principals – the Texarkana Police Department, the Texas Rangers, and the medical examiner – to tell the family that Boykin, Jr. died from natural causes. The officers knew this statement was not true but allowed it to be broadcasted to the family and to the public anyway." (Dkt. 66, p. 12)

There is no summary judgment evidence to support this statement. Further, it is inadmissible as calling for speculation as to what the officers knew.

- "Boykin, Sr. only knows that his ex-wife, Keisha, asked for it (the video) but was told it could not be produced because of a technical issue." (Dkt. 66, p. 13)

This statement lack evidentiary support and is inadmissible as hearsay under FRE 801 as relates to anything Keisha Boykin may have asked unidentified people, and the responses.

For all these reasons, the Court should sustain Defendants' objections and disregard these statements.

WHEREFORE, PREMISES CONSIDERED, Defendants, Jerrika Weaver, Brent Hobbs and William Scott, pray that their First Motion for Summary Judgment be granted and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

By: /s/ *Robert W. Weber*
**Robert W. Weber**, *Lead Attorney*
Texas State Bar No. 21044800
E-mail: bweber@smithweber.com

**SMITH WEBER, L.L.P.**
5505 Plaza Drive
Texarkana, TX 75503
Telephone: 903-223-5656
Facsimile: 903-223-5652

**ATTORNEY FOR DEFENDANT,
JERRIKA WEAVER**

BY: /s/ *Darren K. Coleman*
**Darren K. Coleman**
Texas State Bar No.: 04558570
E-mail: darren.coleman@boonlaw.com

**BOON, CALK, ECHOLS, COLEMAN
AND GOOLSBY, P.L.L.C.**
1800 W. Loop 281, Suite 303
Longview, Texas 75604
(903) 759-2200-telephone
(903) 759-3306-facsimile

**ATTORNEYS FOR DEFENDANTS
BRENT HOBBS AND WILLIAM SCOTT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all counsel of record on this the 27th day of January 2023, via CM/ECF filing and service.

/s/ *Darren K. Coleman*
Darren K. Coleman