**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **PARIS THORPE, Individually and on** | § | |
| **behalf of the Estate of Darren Boykin,** | § | |
| *Plaintiff,* | § | |
| **DARREN BOYKIN, SR., individually,** | § | |
| *Intervenor Plaintiff,* | § | |
| | § | |
| **V.** | § | **Civil Action No. 5:21-cv-106-RWS-JBB** |
| | § | |
| **JERRIKA WEAVER, BRENT HOBBS,** | § | |
| **and WILLIAM SCOTT** | § | |
| *Defendants* | § | |

<u>**REPORT AND RECOMMENDATION**</u>
<u>**OF THE UNITED STATES MAGISTRATE JUDGE**</u>

The above-entitled and numbered civil action was referred to the undersigned United States Magistrate Judge for pretrial purposes pursuant to 28 U.S.C. § 636. Before the Court is the following pending motion:

**Defendants' First Motion for Summary Judgment (Dkt. No. 59).**

The Court, having carefully considered the relevant briefing, recommends the motion be **DENIED**.

## I.    BACKGROUND

This is an action brought by Paris Thorpe, as next friend of A.B. and on behalf of the Estate of Darren Boykin ("Plaintiff"), and Darren Boykin, Sr., individually ("Intervenor"). Plaintiff and Intervenor allege Texarkana Texas Police Officers Jerrika Weaver, Brent Hobbs, and William Scott ("Defendants" or "Defendant officers") failed to render medical aid, resulting in the death of Darren Boykin, Jr. ("Boykin"), under the color of law in violation of Boykin's individual rights under the Fourteenth Amendment of the United States Constitution. Specifically, on August 29,

2019, Defendant officers allegedly knew that Boykin was unable to breathe and was requesting help at the scene of his arrest near Texarkana College and during transport to the Bi-State Justice Building; yet, despite Defendants' duty to provide adequate medical care, they deliberately chose not to provide medical care resulting in Boykin's death. Joint Conference Report (Dkt. No. 25) at 4.

Keisha Boykin was the original Plaintiff and filed her Original Complaint (Dkt. No. 1) on August 29, 2021. She filed individually as the natural mother of Boykin, Jr. and representative of her son's estate. On September 7, 2021, Keisha Boykin and Paris Thorpe, the natural mother of A.B., a minor child, filed a First Amended Complaint (Dkt. No. 7), adding Plaintiff Paris Thorpe, as next friend of the minor child. On January 26, 2022, Keisha Boykin died. On March 2, 2022, Paris Thorpe was substituted as representative of Boykin, Jr.'s Estate. Dkt. No. 39.

Intervenor, Boykin, Sr., the biological father of Boykin, Jr., did not join as a plaintiff in the Original Complaint (Dkt. No. 1) or the Amended Complaint (Dkt. No. 7). Two years and ten days after Boykin, Jr.'s death, Boykin, Sr. filed an unopposed motion to intervene (Dkt. No. 8) on September 8, 2021 and an amended motion the following day (Dkt. No. 10). On October 12, 2021, now-retired Magistrate Judge Caroline M. Craven granted Boykin, Sr.'s unopposed amended motion to intervene. Dkt. No. 15. In Intervenor Plaintiff's Amended Original Complaint, Intervenor alleges the two-year statute of limitations is inapplicable:

> Following Boykin's death, and for the two years preceding the filing of this Complaint, the Intervenor Plaintiff was advised that Boykin's death was due to natural causes. In fact, upon information and belief, the medical examiner listed the cause of Boykin's death as natural. Based on this representation, the Intervenor Plaintiff had no reason or evidence to believe that the Medical Examiner and the Texarkana Police Department were not being forthcoming or were being dishonest about the cause of Boykin's death. The Texarkana Police Department, however, knew of the Defendant officers' wrongful acts and covered them up by never releasing the video of the incident, or any of the incident reports to the public. Instead, they covered up that information until just recently, when the Department

finally released the body cam video footage. Not until that time did the Intervenor Plaintiff discover that there was an intentional misrepresentation as to the cause of Boykin's death. As detailed above, and as revealed for the first time on the body-cam video, it was discovered that Boykin advised the Defendant Officers on multiple occasions that he could not breathe and despite his multiple pleas for help, Boykins was ignored. Boykin[] eventually died after the Defendant Officers attempted to perform CPR using an improper technique and faulty equipment. The Texarkana City Council, City Manager and Chief of Police were fully aware of this information and the unconstitutional actions of their officers. By refusing to release the video, the Council, City Manager, and Chief of Police ratified the unconstitutional conduct of Weaver, Hobbs, and Scott. The contents of the bodycam video were also likely intentionally withheld so that no action could be taken against the Defendant officers and the City of Texarkana.

Dkt. No. 21, ¶ 41.

Defendants have filed a motion for summary judgment, addressing only whether Intervenor's amended complaint (which is deemed filed September 9, 2021) should be dismissed as barred by Texas' two-year statute of limitations. *See* Dkt. No. 59. Because the Court finds under federal law that Intervenor's claims accrued on September 18, 2019 when he was interviewed by Texas Ranger Mason, the undersigned recommends denying the motion.

## II. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American*

*Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc*., 209 F.3d 419, 424 (5th Cir. 2000).

### III. SUMMARY JUDGMENT EVIDENCE

#### A.    Parties' evidence

Defendants attached the following to their first motion for summary judgment: (1) First Affidavit of Joshua Mason ("Mason Aff."), with attached transcript of the recorded statement with Boykin, Sr. (Ex. 1-A) and Investigative Report (Ex. 1-B); (2) First Affidavit of Jerrika Weaver ("Weaver Aff."); (3) Excerpts of the July 19, 2022 deposition of Jerrika Weaver ("Weaver Dep."); (4) Excerpts of the July 27, 2022 deposition of Darren Boykin, Sr. ("Intervenor Dep."); (5) Intervenor Plaintiff's Original Complaint; (6) Intervenor Plaintiff's Amended Original Complaint; (7) Autopsy Report; (8) First Affidavit of Shawn Fitzgerald ("Fitzgerald Aff."); (9) First Affidavit of Brent Hobbs ("Hobbs Aff."); (10) First Affidavit of William Scott ("Scott Aff."); (11) Excerpts of the July 19, 2022 deposition of Brent Hobbs ("Hobbs Dep."); and (12) Excerpts of the July 18, 2022 deposition of William Scott ("Scott Dep.").

Intervenor attached the following to his response: (1) Excerpts of the July 27, 2022 deposition of Darren Boykin, Sr. ("Intervenor Dep."); and (2) Texas Department of Public Safety Texas Rangers Report of Investigation ("Investigative Report").

Defendants attached the following to their reply: (1) Application for Determination and Declaration of Heirship and for Letters of Independent Administration; (2) Judgment Declaring Heirship and Authorizing Issuance of Letters of Dependent Administration; and (3) Notice of Suggestion of Death and Unopposed Amended Motion to Substitute Proper Party Pursuant to Federal Rule of Civil Procedure 25(a).

Defendants also filed objections to certain statements in Intervenor's response, asserting Intervenor did not provide evidentiary support for those statements. Dkt. No. 68 at 9-10. Defendants' objections are noted. The Court sets out below the material facts as discerned from the parties' respective evidentiary submissions.[1]

## B.     Material facts

### 1.     The incident

Following an incident with Texarkana College Police Department ("TCPD") officers on August 29, 2019, Boykin, Jr. was transported by Texarkana Texas Police Department ("TTPD") officer Weaver[2] to Bi-State Jail. Boykin, Jr. was unconscious upon arrival. Investigative Report at 3. CPR was attempted at the scene, and a LifeNet ambulance responded. *Id*. After being transported

---

[1] The material facts set forth in this section represent the facts as discerned by the Court from the pleadings and the parties' respective evidentiary submissions, in light of the relevant summary judgment standard requiring the record be viewed in the light most favorable to the nonmoving party. Accordingly, these are the "facts" for purposes of summary judgment only; they may not be the actual facts. *See Willmore-Cochran v. Wal-Mart Assocs., Inc*., 919 F. Supp. 2d 1222, 1228 & n.4 (N.D. Ala. 2013).

[2] Defendant Jerrika Weaver ("Weaver") has been a peace officer since 2013. Weaver Aff., ¶ 2. She has been employed by the City of Texarkana, Texas since April 2016, working as a patrol officer for the Texarkana Texas Police Department ("TTPD"). *Id*.; Investigative Report at 11.

to Wadley Regional Medical Center, Boykin, Jr. died. *Id.* Texas Ranger Joshua S. Mason ("Mason") was contacted by TCPD Chief Stephen Gass to assist with a Custodial Death Investigation.[3] *Id.* at 1. Mason's Investigative Report provides the following details, supplemented with other evidence of record where appropriate.

### *Events involving TCPD officers*

Video footage from College Bowl in Texarkana depicts Boykin, Jr. walking to the Texarkana Community College campus on August 29, 2019 at 1:58 p.m. and running from the campus at approximately 2:09 p.m. Investigative Report at 16. According to TCPD Chief Gass, he was in his office at the college at approximately 2:00 p.m. that day when he overheard Officer Vickey "Vic" Lynn Thornburg say a theft suspect was spotted at the Health and Science Building. *Id.* at 9.

Texarkana College Dean of Workforce, Community, and Business Education, Brandon Washington, had observed a young black male with a blue backpack near the vocational building. *Id.* at 13. Washington was aware of prior thefts occurring on campus, at least one of which involved a black male with a blue backpack. *Id.* Washington called the Texarkana College Police Department and informed them of the male's presence as the male was entering the Nursing Building. *Id.*

TCPD Officers Gisela Altamirano ("Altamirano"), Vickey Thornburg ("Thornburg"), and Chief Gass ("Gass") responded. *Id.* at 2, 10. Washington observed Thornburg enter the Nursing (Health Science) Building. *Id.* at 8, 14. Thornburg and Altamirano located Boykin, Jr. and made

---

[3] As part of his investigation, Mason secured incident reports from TCPD Chief Gass and TCPD officers Altamirano and Thornburg as well as TTPD officers Weaver, Hobbs, and Scott. Mason Aff., ¶ 4. He also secured recorded statements from Gass, Thornburg, Altamirano, and Weaver. *Id.* He secured the body camera and dash and rear camera videos from TTPD officers Weaver and Hobbs and their patrol units. *Id.*, ¶ 5. He made the incident reports and videos available to the medical examiner who performed the autopsy and prepared a written report dated October 15, 2019. *Id.*, ¶ 7. He also interviewed the parents of Boykin, Jr. *Id.*, ¶ 8.

contact. *Id*. at 2, 5. While Thornburg was attempting to talk with Boykin, Jr., Boykin, Jr. "began shifting his body and took off running," fleeing the building and running toward Richmond Road and College Drive. *Id.* Thornburg grabbed Boykin, Jr.'s backpack, and Boykin, Jr. slid the backpack off. *Id.* at 5. According to Thornburg, "Boykin pushed away, which caused Officer Thornburg to fall down with the backpack." *Id.* at 8.

Boykin, Jr. was running across a field behind College Bowl, crossed Richmond Road and "hid in a car wash bay at the intersection of Richmond Road and College Drive." *Id.* at 5-6. Thornburg quickly left the building and entered the car Chief Gass was operating. *Id.* at 8. They drove toward the car wash. *Id.*

Meanwhile, Altamirano pursued Boykin, Jr. on foot briefly, prior to being transported in a personal vehicle being driven by Washington. *Id.* at 2, 5-6. As Washington's vehicle was driven to Boykin, Jr.'s location, Boykin, Jr. began running again toward the EZ Mart parking lot. *Id*. at 6. Altamirano exited the vehicle and pursued Boykin, Jr. on foot. *Id.* Altamirano was able to "jump on the back area" of Boykin, Jr., causing them both to fall. *Id.* Altamirano was able to handcuff Boykin, Jr.'s left wrist, but Boykin, Jr. put his right arm under his body. *Id.* Altamirano continued to hold Boykin, Jr.'s left arm and Chief Gass arrived and assisted handcuffing Boykin, Jr.'s right arm. *Id.* According to Altamirano, the temperature was hot, about 104 degrees Fahrenheit, and she "just rolled over after Boykin was secured and attempted to breathe normal again." *Id.* Thornburg described Altamirano as "winded" after the event concluded, and he overheard Boykin, Jr. say he could not breathe. *Id.* at 8. Boykin, Jr. was identified and had a parole violation warrant out of Ohio for Burglary. *Id.*

TTPD Officer Weaver arrived on the scene and assisted Chief Gass. *Id.* at 2, 6, 8. Chief Gass requested that Weaver transport Boykin, Jr. to the Bi-State Jail facility and Weaver agreed to

do so. Weaver Aff., ¶ 2. Boykin would not stand up, began lying on his back, and "appeared to be out of breath." Investigative Report at 5. Boykin, Jr. was then carried most of the way to the patrol unit for transport, but he was able to enter the vehicle "under his own power." *Id.* at 6, 9-10. Boykin, Jr. stood on his own to enter the patrol car and sat down. *Id.* at 6.

### *Events involving TTPD officers*

When Weaver arrived on the scene, Boykin, Jr. was in handcuffs and breathing heavily. *Id.* at 11. Weaver stated Boykin, Jr. had said his legs were hurting. *Id.* After Boykin, Jr. was inside the back seat of Weaver's patrol unit, TTPD officer Hobbs opened the car door and spoke with Boykin, Jr.[4] Hobbs Dep. at 17:1-8. According to Hobbs, Boykin, Jr. told Hobbs that he could not breathe and asked if he could turn on the air conditioner. *Id.* at 17:9-15. Hobbs turned the air conditioner on high to give Boykin, Jr. relief from the foot chase, which Hobbs "presumed he was exhausted from . . . running that long distance in the heat of that day." *Id.* at 17:16-19. Hobbs could see Boykin, Jr.'s chest and that he was inhaling and exhaling; he could also hear his breathing heavily at the same time as he was talking. *Id.* at 19:16-25. Hobbs did not see a medical need or that Boykin, Jr. was in any distress. *Id.* at 20:5-13.

TTPD officer Scott testified that Hobbs told him at the scene of the arrest that Boykin, Jr. was hollering from the back seat that he could not breathe and that "it was related to foot pursuit and exhaustion."[5] Scott Dep. 33:9-36:14, 37:7-14 (stating Boykin, Jr. was hollering that he could not breathe after a "lengthy foot pursuit" in the heat). According to Scott, he had no indication that emergency medical attention was needed at that time given the information he was given, the

---

[4] Defendant Brent Hobbs ("Hobbs") has been a peace officer with the City of Texarkana, Texas since February 2008. Hobbs Aff., ¶ 2.

[5] Defendant William Scott ("Scott") was employed as a peace officer with the City of Texarkana, Texas from June 2005 to October 2021. Scott Aff., ¶ 2.

presence of other competent officers who had viewed Boykin, Jr., and the background circumstances of the "relatively lengthy foot pursuit." *Id*. at 40:11-20.

Weaver transported Boykin, Jr. about ten to fifteen minutes from the EZ Mart to the B-State Jail. Investigative Report at 12. She remembered Boykin, Jr. wanting to stretch his legs and "saying he felt as if he was going to pass out when they were near Summer Hill and Blanton Street." *Id.* at 11. According to Weaver, as they became closer to the Bi-State Jail, "Boykin continued to talk about feeling as if he was going to pass out." *Id.* Video footage from Weaver's body camera and an in-car camera indicate Boykin, Jr. appeared to become unconsciousness in the backseat during transport. *Id.* at 15.

During her deposition, Weaver stated she had the ability to drive Boykin, Jr. to the hospital while in transport, but she did not see that Boykin, Jr. was in medical distress. Weaver Dep. at 15:9-16:19 (further stating she would have immediately taken him to the hospital if she felt he was in medical distress). Weaver testified Boykin, Jr. was responsive to her question regarding air conditioning during part of the transport. *Id.* at 41:8-15. According to Weaver, Boykin, Jr. was able to speak, yell, kick the back seat of her car, and she could see him "moving around, opening and closing his eyes as a normal person does, blinking, and he had his mouth opened to breathe like normal." *Id.* at 36:13-16, 55:14-16. However, Weaver further testified she could not see Boykin, Jr.'s face during the majority of the transport and that had she seen Boykin, Jr.'s face as she did when reviewing the rear dash camera video of her patrol unit after the incident, she would have concluded that medical attention was necessary and immediately taken Boykin, Jr. to the hospital. *Id.* at 15:25-16:1, 94:19-95:15.

Weaver stated that when they arrived at the jail she attempted to get Boykin, Jr. to exit the vehicle. Investigative Report at 11-12. Weaver began shaking Boykin, Jr.'s leg for him to exit, but

Boykin, Jr. did not respond. *Id.* at 12. She rubbed Boykin, Jr.'s sternum to get a response and Boykin, Jr. expelled a breath and did not respond. *Id.* She pulled him out of the car and onto the ground. Weaver Dep. at 93:3-7.

Weaver could not feel a pulse and began CPR.[6] Investigative Report at 12. Weaver removed the left handcuff from Boykin, Jr. *Id.* Weaver requested assistance from Scott, and Scott came over and removed the right handcuff. *Id.* Scott continued CPR, and other TTPD officers assisted with CPR until LifetNet arrived and took over. *Id.* Weaver stated at some point an "AED was brought down by a jail nurse and the AED indicated not to use." *Id.* After being transported to Wadley Regional Medical Center, Boykin, Jr. died. Justice of the Peace Nancy Talley pronounced Boykin, Jr. deceased at approximately 6:51 p.m. and signed an order for autopsy and release of medical records. *Id.* at 4.

The Cause of Death Report from Southwestern Institute of Forensic Sciences of Dallas indicated the manner of death was "Natural." *Id.* at 19-20. The Autopsy Report revealed Boykin, Jr. had sickled red blood cells in his lungs, liver, kidney, heart, and spleen. Autopsy Report at 3. According to the autopsy's conclusion, Boykin, Jr. died "as a result of complications of sickle cell trait," and the "physical exertion of running ˜ 1/3 mile, in Texas, in August, precipitated a sickle cell crises that ultimately led to the decedent's death." *Id*. at 5.

## 2.    Mason's interviews of Boykin, Jr.'s parents

Keisha Boykin and Darren Boykin, Sr. are the parents of Darren Boykin, Jr. They divorced in 1999. Intervenor Dep. at 13:3-5. At the time of Boykin, Jr.'s death, Keisha Boykin resided in Texarkana, Texas, and Boykin, Sr. resided in Dayton, Ohio. Mason Aff., ¶ 8.

---

[6] The CPR was chest compressions only; there were no breaths given to Boykin, Jr. Weaver Dep. at 81:11-22.

Mason interviewed Keisha Boykin in person on September 3, 2019. Investigative Report at 17. She stated Boykin, Jr. was from Dayton, Ohio, had left prison in November 2018, and had been living with her since December 2018. *Id.* at 17-18. Keisha said Boykin, Jr. had no known illness or physical issues and had not seen a doctor. *Id.* at 18.

On September 18, 2019, as part of his investigation, Mason returned a phone call from Intervenor Boykin, Sr. who was living in Dayton, Ohio. Mason Aff., ¶ 8; *see also* attached Exhibit 1A.  During this conversation, Boykin, Sr. asked Mason how he could get a copy of the "video cam." Mason responded as follows:

> Well. . . once I complete my report and give it to the Bowie County District Attorney's Office. . . uh. . . they  will look at it and decide whether they want to present it to a grand jury. . . uh. . . or just say that. . . us. . . there was no, no evidence of a crime that occurred. So, once that's complete and the case is closed on my part then any videos and reports can be released to anyone. So you would then need to file an open records request which you can that at any time, including today, if you'd like, but you won't get anything back until the case is closed, if that makes sense.

Mason Aff., Ex. 1-A at 2. Boykin, Sr. responded, "Sure. Sure, sure. Well, that's something I definitely would do." *Id.*

Boykin, Sr. then asked Mason how long he anticipated until his part was completed. *Id.* Mason advised Boykin, Sr. that he was the only Texas Ranger in the county and that it was uncertain. *Id.* (stating "I honestly wish I could tell you"). Boykin, Sr. responded, "Okay. Okay, okay. Well then what I'll do it maybe in two to three weeks. . .," at which time Mason stated "[y]ou can always continue to check back with me." *Id.* (further stating he would be out of town the following week for training). Boykin, Sr. thanked Mason for answering his questions, stating he knew "the procedure that [he] need[ed] to start looking at." *Id.* at 2-3. Mason took Boykin, Sr.'s contact information, and Boykin, Sr. reiterated that he was "looking forward to getting a copy of

the autopsy" with Mason's report and requesting the videos. *Id.* Boykin, Sr. testified Mason never reached out to him after he completed the investigation. Intervenor Dep. at 126:6-10.

Mason concluded his investigation and met with Bowie County District Attorney Office First Assistant Kelly Crisp. Investigative Report at 20. No criminal activity was identified, and the investigation was closed on October 28, 2019. *Id.*

**3.    Boykin, Sr.'s failure to obtain the videos**

Roughly one month after Boykin, Sr.'s conversation with Mason, Mason closed his file, after which time the videos should have been available according to Mason's comments on the September 18, 2019 phone call. During his deposition, Boykin, Sr. admitted he knew at the time of his son's death that there might be body cam, dash cam, or rearview camera videos available and that the autopsy report and videos would be important to him understanding what occurred. Intervenor Dep. at 53:5-13. According to Boykin, Sr., "that's the reason why we kept asking" and he kept "getting stonewalled." *Id.* at 53:14-16. Boykin, Sr. testified neither he nor his ex-wife, Keisha Boykin, could get them. *Id.* at 68:15-69:6.

According to Boykin, Sr., he did not learn of the video's availability until right around the second anniversary of his son's death when the video ended up on social media and he was alerted to it by family and friends. *Id.* at 43:16-44:14, 45:7-14. After Keisha called to ask Boykin, Sr. if he had seen the video on social media, he asked his ex-wife if she got a copy of the video, to which she responded as follows:

> She said the Texarkana Texas Police Department kept telling her over and over that there was something wrong with the video. There was something wrong with the mechanics of the video, and that they could not give us the video. And we kept asking and asking. Then all of a sudden a couple of days before, I think, my son's death anniversary come up, the video is on social media. . . .

*Id.* at 44:3-14. Boykin, Sr. asked Keisha if she had any other video or anything else, and she stated she only had the video on social media and the autopsy. *Id.* at 42:18-43:1. It was at that time, a couple of days before his complaint was filed, that Boykin, Sr. got a copy of the Autopsy Report. *Id.* at 43:2-3

Boykin, Sr. testified he never contacted Officers Weaver, Hobbs, Scott, or the TTPD for a copy of the reports and videos. *Id.* at 46:10-11, 47:6-11, 104:14-24; Fitzgerald Aff., ¶¶ 5-6 (stating Boykin, Sr. did not personally contact him by telephone, written message, email or any other means to request a copy of the incident or autopsy reports or the videos nor did he submit a written open records requested addressed to the TTPD or the City of Texarkana, Texas seeking same); Weaver Aff., ¶¶ 3-5 (stating Boykin, Sr., Keisha Boykin, nor anyone claiming to represent Boykin, Sr. or Keisha Boykin contacted her by telephone, written message, email, or any other means to request a copy of the incident reports or the videos and further stating that had they done so, she would have turned the request over to Assistant Police Chief Shawn Fitzgerald); Hobbs Aff., ¶¶ 3-5 (stating Boykin, Sr., Keisha Boykin, nor anyone claiming to represent Boykin, Sr. or Keisha Boykin contacted him by telephone, written message, email, or any other means to request a copy of the incident reports or the videos and further stating that had they done so, he would have turned the request over to Assistant Police Chief Shawn Fitzgerald); Scott Aff., ¶¶ 3-5 (stating Boykin, Sr., Keisha Boykin, nor anyone claiming to represent Boykin, Sr. or Keisha Boykin contacted him by telephone, written message, email, or any other means to request a copy of the incident reports or the videos and further stating that had they done so, he would have turned the request over to Assistant Police Chief Shawn Fitzgerald).

Mason states Boykin, Sr. "seemed to understand the instructions" he gave him concerning filing an open records request to secure the videos and reports and that Boykin, Sr. could call

Mason at any time to determine when the case was closed and materials available to the public. Mason Aff., ¶ 11. Boykin, Sr. acknowledged Mason told him during the September 18, 2019 conversation that he could file an open records report when the case was closed by the District Attorney. Intervenor Dep. at 60:1-7. Even though Boykin, Sr. mentioned on the phone that he might call Mason back in two or three weeks, Boykin, Sr. does not recall ever calling Mason back after the September 18, 2019 conversation. *Id*. at 62:8-25. Mason states in his affidavit that he does not recall receiving any follow-up phone call or email from Boykin, Sr. Mason Aff., ¶ 15. Boykin, Sr. further stated he did not personally seek to get the videos directly from Mason. Intervenor Dep. at 69:18-21. According to Mason, Boykin, Sr. never "directly" sent him a written open records request asking for the incident and autopsy reports or the videos. Mason Aff., ¶ 15.

Boykin, Sr. further admitted he never directly submitted a written open records request to the Texarkana Community College, the Medical Examiner's Office, the Texas Rangers, the Texas Department of Public Safety, the Texarkana Police Department, or the Bowie County Attorney's Office. Intervenor Dep. at 47:6-10, 105:13-24, 107:21-108:3. However, he repeatedly testified that his ex-wife was doing so on his behalf. *Id*. at 46:15-18 ("I asked Keisha Boykin who was my wife, said 'We are going to get to the bottom of this, and I am getting the video.' I trust my ex-wife."); 53:18-25 (stating Keisha said she would handle it because she was calmer than Boykin, Sr., but then she started getting stonewalled); 58:1-30 (stating several times his ex-wife filed an open records request on "our behalf" and on behalf of "our child"); 70:5-8 (stating Boykin, Sr. and his ex-wife were "in agreement that we were going to do this," with her agreeing to get the videos herself); 76:7-20 (stating he did not follow-up with Mason because Boykin, Sr. and Keisha were "working together as a team" to get the videos); 106:11-107:12, 108:4-6, 143:16-145:2.

14

Boykin, Sr. explained his part was to get information which he then shared with his ex-wife, and her part was to then do it. *Id*. at 108:12-15; *see also id.* at 60:8-22, 62:11-18 (stating he immediately shared the information and instructions from Mason with Keisha Boykin who agreed to do what they had been told); 63:16-19 (stating he told Keisha "what we had to do, that when. . . his report was done, that we can then file what they call. . . they said records to be exposed), 66:6-10 (stating he shared the information from Mason about an open records request with Keisha); 83:2021 ("Ranger Mason gave me instructions [which] I shared with my wife, ex-wife."); 84:14-18. Specifically, Boykin, Sr. testified as follows regarding an open records request:

> She and I was doing that, and we kept getting stonewalled, that the audio was not ready yet, and this and that is not ready yet. And it should be like this, available that you guys would see that we were requesting it. And we had to get a lawyer involved to make this happen.[7]

*Id*. at 63:20-64:1; *see also id.* at 69:6-11 (stating some office kept telling Keisha that the videos were not available); 111:18-112:9 (stating Keisha told Boykin, Sr. she was drafting a letter about everybody that they had tried to contact and how they were "getting stonewalled").

Boykin, Sr. testified that for the first two years following his son's death, he believed his son died naturally. *Id.* at 113:25-114:1, 118:18-119:4 (stating he was told that by the police and Mason and that even though he did not understand how his son had died of natural causes he "believed them"). Boykin, Sr. testified he could not file his complaint sooner because he did not have possession of the video that they had requested multiple times. *Id.* at 128:5-10.

---

[7] Boykin, Sr. testified he was not sure when Keisha's relationship with the Scott Palmer law firm started. Intervenor Dep. at 84:23-85:2. He stated the first time he heard about it was in the newspaper right after Keisha filed her complaint. *Id.* at 85:3-18, 87:2-21 (stating he talked to the Scott Palmer law firm shortly after the lawsuit was filed). After Boykin, Sr. realized the law firm was not going to help him, he decided he needed to get his own representation. *Id.* at 113:5-7.

### 4.    Status of the pleadings

Boykin, Jr.'s mother, Keisha Boykin, filed a wrongful death suit against Defendants on August 29, 2021, individually as a wrongful death beneficiary and in her representative capacity on behalf of the Estate of Boykin, Jr. Dkt. No. 1. There is no question that Keisha Boykin timely filed her original complaint within two years of Boykin, Jr.'s death. Dkt. No. 1. An amended complaint was timely filed nine days later, on September 7, 2021, that included Boykin, Jr.'s minor, biological child as a wrongful death beneficiary. Dkt. No. 7.

Boykin, Sr. did not join as a plaintiff in the original complaint or the amended complaint. Boykin, Sr. filed his Original Complaint in Intervention on September 8, 2021. On September 9, 2021, Boykin, Sr. moved to Amend his Complaint in Intervention alleging that the two-year statute of limitations was inapplicable under the discovery rule and the Medical Examiner and the Texarkana, Texas Police Department, City Chief of Police, City Manager and City Council fraudulently concealed videos from Weaver's body camera and dash and rear camera of her patrol unit. Intervenor Plaintiff's Amended Original Complaint at 9.

Keisha Boykin died on January 26, 2022. She was not deposed prior to her death. Nor did she give a statement regarding her efforts to obtain a copy of the videos, or that she had filed her lawsuit intending to add Boykin, Sr. as a plaintiff.

### IV. APPLICABLE LAW

A district court may dismiss a complaint on statute of limitations grounds if it is clear from the complaint that the claims are time-barred. *Taylor v. McLennan Cnty.*, No. 6-16-CV-00395-RP-JCM, 2018 WL 10799329, at *2 (W.D. Tex. Aug. 31, 2018), *report and recommendation adopted*, No. W-16-CV-00395-ADA, 2018 WL 10799332 (W.D. Tex. Oct. 2, 2018), *aff'd*, 790 Fed. Appx. 634 (5th Cir. 2020) (citation omitted). Because 42 U.S.C. § 1983 does not provide a statute of limitations, the statute of limitations for a civil rights action is determined by state law. *Id.* (citing

*Owens v. Okure*, 488 U.S. 573 (1989); *Burrell v. Newsome*, 883 F. 2d 416, 418 (5th Cir. 1989)). Limitations for a suit brought under § 1983 "is determined by the general statute of limitations governing personal injuries in the forum state." *Allen v. Hays*, 65 F.4th 736, 751 (5th Cir. 2023) (quoting *Balle v. Nueces Cnty.*, 952 F.3d 552, 556 (5th Cir. 2017) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001))).

The Texas personal injury limitation statute provides that "[w]rongful death and survival claims are . . . subject to a two-year statute of limitations period that begins on 'the death of the injured person.'"[8] *Ruffin v. Frito-Lay N. Am., Inc.*, No. 3:20-CV-00315-N (BT), 2020 WL 8513709, at *2 (N.D. Tex. Dec. 31, 2020), *report and recommendation adopted*, No. 3:20-CV-00315-N (BT), 2021 WL 535478 (N.D. Tex. Feb. 12, 2021) (quoting *Estate of King v. Polk Cty.*, 2020 WL 1510292, at *4 (E.D. Tex. Mar. 30, 2020) (citing TEX. CIV. PRAC. & REM. CODE § 16.003)). Texas case law illustrates that the limitations period must be calculated for each wrongful death claimant. *McPeak-Torres v. Texas*, No. CV G-12-075, 2015 WL 12748276, at *2 n. 2 (S.D. Tex. Jan. 22, 2015) (citing *Cox v. McDonnell–Douglas Corp.*, 665 F.2d 566, 567 (5th Cir. 1982) (recognizing that under Texas law some statutory beneficiaries' wrongful death claims may be barred while others (i.e., minors) received the benefit of tolling);[9] *Ruiz v. Guerra*, 293 S.W.3d 706, 716 (Tex. App.–San Antonio 2009, no pet.) (same) (emphasis added in *McPeak-Torres*)).

---

[8] Under the Texas Wrongful Death Statute, a person who causes the death of another person because of his or her "wrongful act, neglect, carelessness, unskillfulness, or default is liable for damages." *Ruffin v. Frito-Lay N. Am., Inc.*, No. 3:20-CV-00315-N (BT), 2020 WL 8513709, at *2 (N.D. Tex. Dec. 31, 2020), *report and recommendation adopted*, No. 3:20-CV-00315-N (BT), 2021 WL 535478 (N.D. Tex. Feb. 12, 2021) (citing TEX. CIV. PRAC. & REM. CODE § 71.002(b)). The Texas Survival Statute allows a personal injury survival action "in favor of the heirs, legal representatives, and estate of the injured person." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 71.021(b)).

[9] Here, the amended complaint only added the wrongful death claim of minor A.B. There has been no argument that A.B.'s claim is barred by limitations.

Although the relevant statute of the forum state furnishes the limitations period, federal law determines the date the accrual commences. *See Owens v. Okure*, 488 U.S. 235 (1989).

"A federal court applying a state statute of limitations must give effect to the state's tolling provisions, as well." *Est. of I.C.D. v. Beaumont Indep. Sch. Dist.*, No. 1:18-CV-137, 2020 WL 1028073, at *6 (E.D. Tex. Mar. 2, 2020). Under Texas law, fraudulent concealment is an equitable doctrine that tolls the statute of limitations.[10] *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 366 (5th Cir. 2000). "Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the statute of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence." *Id.* (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983)). Mere concealment is insufficient to establish fraudulent concealment. *Id.* (citing *In the Matter of Placid Oil Co.*, 932 F.2d 394, 399 (5th Cir.1991)). The party asserting the fraudulent concealment defense to the statute of limitations bears the burden of showing that the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the one to whom it belongs. *Id.* (citing *Timberlake v. A.H. Robins Co., Inc.*, 727 F.2d 1363, 1366 (5th Cir.1984)).

## V. DISCUSSION

### A.    The issues

The arrest and passing of Boykin, Jr. occurred on August 29, 2019. Intervenor does not contest that his claims are governed by the two-year limitations period, or that his complaint in intervention was filed after the two-year period beginning with the date of his son's death. Instead,

---

[10] "When a defendant controls the facts surrounding causation such that a reasonable person could not obtain the information even with a diligent investigation, a cause of action accrues, but the statute of limitations is tolled." *Piotrowski v. City of Houston*, 237 F.3d 567, 577 n.13 (5th Cir. 2001) (citations omitted).

Intervenor argues his wrongful death claims are not barred by limitations because his claims relate back to the time that Keisha Boykin timely filed her original complaint. Alternatively, Intervenor argues that (1) his claims did not accrue until he became aware (after watching the video) of the causation, or connection, between the injury and Defendants' actions; or (2) the two-year period was equitably tolled pursuant to fraudulent concealment.

**B.    Intervenor's claims do not relate back to the date of the filing of the action under Federal Rule of Civil Procedure 15(c)(1)(A)**

To determine whether Intervenor's complaint relates back to Keisha Boykin's original complaint, the Court applies Federal Rule of Civil Procedure 15(c)(1). *Nobre on behalf of K.M.C. v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 440 (5th Cir. 2019) (citing *Sanders-Burns v. City Of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (applying state-law statute of limitations and Rule 15 for relation back in a § 1983 suit)). The relation-back doctrine under Federal Rule 15(c) allows for amendments to a pleading to relate back to the date of the original pleading, which can save a claim from being time-barred. *Jones v. Lamar Cnty.*, No. 4:21CV00156-SDJ-CAN, 2022 WL 17175071, at *10 (E.D. Tex. Sept. 9, 2022), *report and recommendation adopted*, No. 4:21-CV-156-SDJ, 2022 WL 17170943 (E.D. Tex. Nov. 22, 2022) (citing *Wilson v. City of Mission*, No. 7:18-CV-00399, 2020 WL 2079359, at *3 (S.D. Tex. Apr. 29, 2020) ("The relation-back doctrine permits an amended complaint to substitute in place of the original complaint, and thus cure any potential statute of limitations issues, when the doctrine as embodied in Federal Rule of Civil Procedure 15(c) and elaborated upon by the courts is satisfied.")). Pursuant to Rule 15(c)(1)(A), an amended complaint can relate back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back.[11] *Curry v. Holcomb*, No. 9:20-

---

[11] Additionally, an amendment to a pleading relates back to the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original

CV-25, 2022 WL 7180363, at *2 n. 2 (E.D. Tex. Sept. 21, 2022), *report and recommendation adopted*, No. 9:20CV25, 2022 WL 7145417 (E.D. Tex. Oct. 12, 2022).

Applying Rule 15(c)(1)(A), the Court considers whether "the law that provides the applicable statute of limitations" – Texas law – allows relation back. *Nobre*, 935 F.3d at 441; *see also Est. of I.C.D. v. Beaumont Indep. Sch. Dist.*, No. 1:18-CV-137, 2020 WL 1028073, at *10 (E.D. Tex. Mar. 2, 2020) (considering both tolling of limitations under state law and whether the claims related back under Rule 15(c)(1) and concluding the claims in the third amended complaint did not relate back to a timely-filed state court petition). Texas courts have made clear that when an action is not commenced by a statutory beneficiary or for his/her benefit and they are not added as a party until after limitations runs, their claims will not relate back to the date of the filing of the action. *McPeak-Torres v. Texas*, No. CV G-12-075, 2015 WL 12748276, at *2 (S.D. Tex. Jan. 22, 2015) (citing *East Line & Red River R. Co. v. Culberson*, 10 S.W. 706, 708 (Tex. 1889) (addition of decedent's mother as a plaintiff in an amended complaint did not relate back to the date of the filing when the action was not brought by her or for her benefit and she was not added as a party until after limitations ran); *Bane v. Rosser*, No. 11–01–00080–CV, 2001 WL 34375776, at *4 (Tex. App.–Eastland, Nov. 8, 2001, no pet.) (holding Bane's claims did not relate back to the date of the filing of the original complaint filed by Allen and, as a result, Bane's survival and wrongful death claims were time barred); *but see Morin v. Ford Motor Co*., Nos. 3:07–CV–1700–L, 3:08–CV–779–L, 2009 WL 4286027, at *4 (N.D. Tex. 2009) (distinguishing *Bane* when "the representative of the estate brings this [wrongful death] action on behalf of all statutory beneficiaries.")).

---

pleading or the amendment changes the party or the naming of the party against whom a claim is asserted, if certain conditions are satisfied. FED. R. CIV. P. 15(c)(1)(B)-(C).

Here, Intervenor claims that suit was filed on his behalf as a statutory beneficiary pursuant to Texas Civil Practice and Remedies Code § 71.004.[12] Dkt. No. 65 at 6. According to Plaintiff, the Texas Wrongful Death statute contemplates that only one action will be brought and requires the action to be prosecuted for the benefit of all who are so entitled under the Act. *Id.* (citing, among other cases, *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 850 (Tex. App. – San Antonio 1997, writ denied)); *see also Morin*, 2009 WL 2486027, at *2. Intervenor contends all statutory wrongful death beneficiaries are necessary parties to a wrongful death action under Texas law. *Id.*

However, the "one suit" rule is not mandatory, and "[a] defendant may waive the right to urge error based on the non-joinder of a statutory beneficiary." *Nguyen v. Inspections Now, Inc.*, No. CV H-22-00209, 2022 WL 817074, at *3 (S.D. Tex. Mar. 17, 2022) (quoting *Bane*, 2001 WL 34375776, at *3; also citing *Fort Bend Cnty. v. Norsworthy*, Case No. 14-17-00520-CV, 2019 WL 1291526, at *5 n.9, 10 (Tex. App. – Houston [14th Dist.] Mar. 21, 2019)). If a defendant may waive his right to insist on all statutory beneficiaries being joined, then there was no requirement that Keisha Boykin bring the wrongful death claim on behalf of Boykin, Sr. *Bane*, 2001 WL 34375776, at *3.

---

[12] The Texas Wrongful Death statute provides that "[a]n action to recover damages [for the wrongful death of a spouse, child, or parent] is for the exclusive benefit of the surviving spouse, children, and parents of the deceased," and that "[t]he surviving spouse, children, and parents of the deceased may bring the action[,] or one or more of those individuals may bring the action for the benefit of all." *Nguyen v. Inspections Now, Inc.*, No. CV H-22-00209, 2022 WL 817074, at *2 (S.D. Tex. Mar. 17, 2022) (quoting Tex. Civ. Prac. & Rem. Code § 71.004). "The Texas Wrongful Death statute contemplates that only one suit shall be brought" on behalf of all the statutory wrongful death beneficiaries, "which shall be for the benefit of all parties entitled to recover." *Id.* (quoting *McPeak-Torres v. Texas*, Case No. G-12-075, 2015 WL 12748276, at *2 (S.D. Tex. Jan. 22, 2015) (citing Tex. Civ. Prac. & Rem. Code § 71.004)). "The purpose of this rule was to protect the defendant from multiple suits arising out of the same death." *Id.*

Boykin, Sr. relies on *Tamez v. Mack Trucks, In*c., 100 S.W.3d 549 (Tex.App.—Corpus Christi 2003), *rev'd on other grounds*, 206 S.W.3d 572 (Tex. 2006),[13] where the court allowed an otherwise untimely wrongful death intervenor Cantu to join suit because the intervening claims related back to a timely filed complaint filed on Cantu's behalf by the other statutory beneficiaries. *Id.* at 565. However, unlike here, it was undisputed that the Tamez plaintiffs had filed the suit on behalf of all statutory beneficiaries, including the otherwise untimely intervenor. *Id.* at 564. Here, Defendants argue Intervenor is not a beneficiary of the estate of Boykin, Jr. and was never included by name or as an "heir" to the estate in either the original or amended complaints. Dkt. No. 68 at 2. Defendants are correct on both points.

Texas law "authorizes survival actions by the estate's personal representatives and heirs at law." *Dukes v. Strand*, No. 3:15-CV-3600-BT, 2019 WL 2567687, at *3 (N.D. Tex. June 21, 2019) (quoting *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 212 (5th Cir. 2016) (discussing TEX. CIV. PRAC. & REM. CODE § 71.021(b))). An "heir" is "a person who is entitled under the statutes of descent and distribution to a part of the estate of a decedent who dies intestate." *Id.* (quoting TEX. EST. CODE § 22.015). If an unmarried person dies intestate, their estate is first passed down to their living children and grandchildren. *Id.* (citing TEX. EST. CODE § 201.001(a)-(b)).

On March 2, 2022, the Court granted the Notice of Suggestion of Death and Unopposed Amended Motion to Substitute Proper Party Pursuant to Federal Rule of Civil Procedure 25(A) (Dkt. No. 36), substituting Paris Thorpe, the mother and sole guardian of A.B., for Keisha Boykin, deceased, as the Plaintiff bringing the estate's survival action. Dkt. No. 39. Intervenor did not

---

[13] Even in this case cited by Intervenor, the court indicated the "one suit" rule is not mandatory. *See Tamez v. Mack Trucks, Inc.*, 100 S.W.3d 549, 564 (Tex.App.—Corpus Christi 2003), *rev'd on other grounds*, 206 S.W.3d 572 (Tex. 2006) (noting that one or more of the individuals listed in TEX. CIV. PRAC. & REM. CODE § 71.004(a) *may* bring the action for the benefit of all and further noting that where "suit is brought by only one, or some but not all, of the parties, it must appear that the suit was brought for the benefit of all").

object to the requested substitution. Dkt. No. 68-3, Def. Ex 15 at 2, 4. According to Plaintiff's Notice of Suggestion of Death, due to Keisha Boykin's declining health, Paris Thorpe applied for the determination of heirship. Dkt. No. 36.

On May 22, 2022, Judgment Declaring Heirship and Authorizing Issuance of Letters of Dependent Administration was entered in the Bowie County Court at Law.  Dkt. No. 68-2, Def. Ex 14. Boykin, Jr.'s minor daughter A.B. was listed as Boykin, Jr.'s heir, and Thorpe was appointed administrator of the estate.  Thus, the survival claim of the estate is for the sole benefit of A.B. As such, Intervenor has no claim as an heir to the estate of Boykin, Jr., including the survival cause of action. What is more, although Keisha Boykin brought a survival claim as personal representative of the estate of Boykin, Jr., *id*., ¶ 142, she did not name any statutory beneficiaries (much less Boykin, Sr.) under TEX. CIV. PRAC. & REM. CODE § 71.004.

The cases relied upon by Intervenor are distinguishable because in each case the intervenor/substituting plaintiffs had existing, timely claims to which the amended claims could relate back. *See Bradley v. Burnett*, 687 S.W.2d 53, 55 (Tex.App.—Dallas 1985, no writ) (the intervenors asserting wrongful death claims had timely filed survival claims and were allowed to add the wrongful death claims because they arose out of the same transaction or occurrence as the survivor claims); *see also Slaughter v. S. Talc Co.*, 949 F.2d 167, 175 (5th Cir. 1991) (Mrs. Moran and Mrs. Green, who sought to substitute themselves individually for their deceased spouses, were plaintiffs in the original complaint, and the amendment sought to recover for the injury originally alleged not only as representatives of their husbands' estates, but also as individuals injured in their own right; defendants had adequate notice within the limitations period of Moran's and Green's amended claims, and those claims related back to the original pleadings).

Defendants are also correct that Keisha Boykin's timely filed pleading did not assert an action on behalf of Intervenor. Keisha Boykin only brought the wrongful death claim for herself without any mention of Intervenor. Intervenor was not listed in the caption of the original complaint.[14] Intervenor admitted he did not contact the Scott Palmer Law Firm, the attorneys for Plaintiff Keisha Boykin, until a few days "after" the lawsuit was filed. Intervenor Dep. at 85:3-21, 86:24-87:21, 112:10-23.

As in *Bane*, in her wrongful death claim against Defendants, "Plaintiff" Keisha Boykin sought actual and punitive damages as well as attorney's fees. Dkt. No. 1, ¶¶ 140, 148-56. Keisha's complaint concluded with the following prayer: "*Plaintiff* prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. *Plaintiff* further prays for all other relief, both legal and equitable, to which *she may show herself* justly entitled." *Id.* at 24 (emphasis added). For all these reasons, Intervenor's claims did not relate back to the filing of Keisha Boykin's original complaint.

## C.    Intervenor's claims accrued September 18, 2019 when he was interviewed by Mason, making Intervenor's complaint timely

The Court now considers, under federal law, when Intervenor's wrongful death claims accrued. As noted above, although the relevant statute of the forum state furnishes the limitations period, federal law determines the date the accrual commences. *See Owens v. Okure*, 488 U.S. 235 (1989). A claim under § 1983 accrues when the plaintiff "knows or has reason to know that [s]he has been hurt and who has inflicted the injury." *Martinez v. El Paso Police Dep't*, No. EP-22-CV-

---

[14] Rule 10(a) of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties." *Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022) (quoting FED. R. CIV. P. 10(a)). Courts at least give the caption "considerable weight when determining who the plaintiffs to a suit are since plaintiffs draft complaints." *Id.* (quoting *Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006)).

00350-DCG, 2023 WL 2764659, at *3 (W.D. Tex. Mar. 31, 2023) (quoting *Turnage v. Britton*, 29 F.4th 232, 244 (5th Cir. 2022) (cleaned up in *Martinez*)).

According to Intervenor, the federal "discovery rule" considers the plaintiff's awareness of the existence of the injury <u>and</u> the causation, or connection, between the injury and Defendants' actions. Dkt. No. 66 at 8 (relying on *Piotrowski v. City of Houston* [*Piotrowski I*], 51 F.3d 512, 516 (5th Cir. 1995)); *see also Piotrowski v. City of Houston* [*Piotrowski II*], 237 F.3d 567, 576 (5th Cir. 2001) (citing *Piotrowski I*).[15] Intervenor asserts he did not know the potential cause of his son's death until he saw the video:

> Before that, all he had been told by the investigative agencies was that his son's death was due to natural causes. . . . It was not until he saw the video and saw his son calling for help and struggling to breath, all while in the control and custody of the Defendants, did he know that the cause was something different. Once he knew that, his cause of action accrued. His intervention was filed well-within two years of that date and is therefore timely.

*Id.* at 9.

In *Piotrowski II*, the Fifth Circuit stated "[a] plaintiff's awareness" for claim accrual purposes "encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski II*, 237 F.3d at 576 (citation omitted). The Fifth Circuit emphasized that "[a] plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim." *Id.* (citing *Harrison*, 708 F.2d at 1027). The court further stated that actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further." *Id.* (citation omitted).

---

[15] The decision in *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) was based on the actual withholding by the City of certain information relating to the plaintiff's attack and the shielding of those officers involved. This was information she was not able to obtain from other, non-police sources. *Newman v. Guedry*, No. 1:10-CV-795, 2011 WL 13187368, at *3 (E.D. Tex. May 5, 2011), *aff'd sub nom. Newman v. Coffin*, 464 Fed. Appx. 359 (5th Cir. 2012).

In addressing accrual under the "discovery rule" of an FTCA claim, the Fifth Circuit explained "[t]he causal-connection element is met if the plaintiff had knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the injury and [the defendant's actions] or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection." *Roe v. United States*, 839 Fed. Appx. 836, 843 (5th Cir. 2020) (quoting *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 488 (5th Cir. 2016) (alteration in original)). Recently, in a post-*Piotrowski* case involving a § 1983 claim, the Fifth Circuit explained as follows:

> A claim accrues when the would-be plaintiff "knows or has reason to know ... that he has been hurt and who has inflicted the injury." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) (per curiam) (quotation omitted). Plaintiffs have reason to know of their cause of action when they have "notice of facts which, in the exercise of due diligence, would have led to actual knowledge" of injury and causation. *Roe v. United States*, 839 F. App'x 836, 843 (5th Cir. 2020) (quotation omitted). If plaintiffs have access to facts that they do not understand themselves, due diligence can require them to "seek professional advice" about their potential claims. *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983). In short, the limitations period begins when "the circumstances would lead a reasonable person to investigate further." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995).

*Turnage v. Britton*, 29 F.4th 232, 244 (5th Cir. 2022).

Noting Intervenor was aware of the injury to his son when he learned of his death and further noting Intervenor's subsequent conversation with Texas Ranger Mason,[16] Defendants assert Intervenor had more than sufficient knowledge as of August 29, 2019 of both his injury (i.e. his son's passing) and the connection to the custodial officer(s). Dkt. No. 68 at 7 (citing *Harrison*, 708 F.2d at 1027 ("The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to

---

[16] Defendants do not explain how Boykin, Sr.'s conversation with Ranger Mason on September 18, 2019 contributed to Boykin, Sr.'s knowledge on August 29, 2019.

conclude that there was a causal connection . . . or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury.")). Thus, Defendants argue accrual is not deferred, and the statute of limitations began on the date of the incident and passing of Darren Boykin, Jr. – August 29, 2019.

According to Intervenor, following his son's death, he was advised that Boykin Jr.'s death was due to natural causes. Dkt. No. 66 at 9 (citing *Riley v. Sheely*, No. 4:09CV425, 2010 WL 1537154, at *3 (E.D. Tex. Mar. 25, 2010), *report and recommendation adopted*, No. 4:09CV425, 2010 WL 1540127 (E.D. Tex. Apr. 16, 2010) ("Because Plaintiff has alleged that she was told Elliot's death was a suicide and that she did not learn of the circumstances of Elliot's death prior to August 30, 2007, she has alleged sufficient facts to show that her cause of action may not have accrued until that time. Therefore, the Court declines to grant judgment on the pleadings on Defendant's limitations defense as to Plaintiff's claims under Section 1983.")). Intervenor argues it was not until he saw the video of his son while in the control and custody of Defendants that he learned the circumstances of Boykin, Jr.'s death. *Id.* at 10 ("At the same time, Boykin, Sr. was also told, based on the medical examiner's report, that Boykin, Jr.'s death was due to natural causes. Boykin, Sr. is not a medical professional, nor did he have access to any of the information Defendants and their employer had access to. Therefore, Boykin, Sr. had no way to know that the Defendants had a hand in causing his son's death until he was able to view the video. Once he did, Boykin, Sr. filed suit within a matter of days.").

The Court must determine when "the circumstances would lead a reasonable person to investigate further." *Turnage*, 29 F.4th at 244. Having carefully reviewed the evidence before the Court, the Court does not find the circumstances – as they existed on August 29, 2019 – would lead a reasonable person to investigate further. However, the Court does not find the release of the

video the appropriate date either. That is so because "[a] plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, [sic] and is charged with the knowledge of all facts such an investigation would have disclosed." *Beckwith v. City of Houston*, 790 Fed. Appx. 568, 574 (5th Cir. 2019) (quoting *Jensen v. Snellings*, 841 F.2d 600, 607 (5th Cir. 1988)).

Here, as of his conversation with Ranger Mason, Intervenor learned of such facts. On September 18, 2019, Mason returned a phone call from Boykin, Sr. and "interviewed" Boykin, Sr. on the phone. Mason Aff., ¶ 8. During that conversation, Intervenor stated to Mason "I was informed that you were the deputy that's looking into the …uh…incident report with my son's death, Darren Boykin, Jr." Boykin, Sr.'s Recorded Statement (Dkt. No. 59-1) at 2. Mason acknowledged to Intervenor that he was investigating an "in custody" death. *Id.* Mason also informed Intervenor that the matter would be presented to the Bowie County District Attorney. Intervenor was also fully aware at that time that a video existed of the incident and he asked how to obtain a copy. *Id*. at 3. Thus, by September 18, 2019, Intervenor had full knowledge of his son's death, that the death occurred in police custody, that the death was being investigated by Ranger Mason, and that the incident would be presented to the District Attorney's office. As of that conversation, Intervenor had notice of facts which would have led to actual knowledge of both injury and the connection to Defendants' acts.

To the extent Defendants seek to rely on Texas' discovery rule to argue Boykin, Sr.'s wrongful death claims accrued on the date of Boykin, Jr.'s death, the Court finds such argument without merit. Defendants assert in their motion that Texas' discovery rule is inapplicable to Boykin, Sr.'s wrongful death cause of action because a wrongful death in Texas is not inherently

undiscoverable as a matter of law.[17] Dkt. No. 59 at 21; *but see* Dkt. No. 68 at 6 (Defendants' reply referencing the correct accrual standard under federal law). The Court has located a federal case involving claims under § 1983 wherein the court referenced the applicable state's discovery rule along with the accrual standard under federal law. *See Martinez v. El Paso Police Dep't*, No. EP-22-CV-00350-DCG, 2023 WL 2764659 (W.D. Tex. Mar. 31, 2023). However, the court in *Martinez* viewed Texas' discovery rule as a tolling provision and only addressed it after rejecting the plaintiff's argument as to when her excessive force claims accrued pursuant to application of federal law. *Id.* at *6.

The Fifth Circuit has explained the discovery rule is an accrual rule for the applicable statute of limitations—not a tolling rule—and simply defers the accrual of a cause of action. *Shelby v. City of El Paso, Tex.*, 577 Fed. Appx. 327, 331 (5th Cir. 2014) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996) ("The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence should have known of the facts giving rise to the cause of action.")). Thus, Intervenor is correct that the discovery rule as applied under federal, not state, law sets the accrual date of Intervenor's § 1983 claim. *Whitaker v. McDonald*, No. 20-40569, 2022 WL 68972, at *2 (5th Cir. Jan. 6, 2022).

In sum, the summary judgment evidence, viewed in the light most favorable to Intervenor, establishes the correct accrual date as September 18, 2019. Boykin, Sr. sought leave to intervene on September 8, 2021 (Dkt. No. 8) and amended his motion the following day (Dkt. No. 10).

---

[17] Texas law is explicit that wrongful death actions accrue at the time of death, and that wrongful death and related causes of action are not inherently undiscoverable. *McElvy v. Southwestern Corr., L.L.C.*, No. 3:19-CV-1264-N, 2022 WL 3567182, at *3 (N.D. Tex. Aug. 17, 2022) (citing *Estate of Mott v. FCA US L.L.C.*, 2019 WL 1765588, at *2 (S.D. Tex. 2019) (unpub.) (The "Texas Supreme Court has explicitly held that the discovery rule does not apply to actions resulting in death." (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 350 (Tex. 1990))); *see also Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 627 (Tex. 2023).

Although the Court did not grant Intervenor's amended motion until October 12, 2021, Intervenor's amended complaint is deemed filed on the date he filed his amended motion for leave to intervene. *Perez v. New Breed Logistics, Inc.*, No. 2:16-CV-127, 2017 WL 40289, at *4 (S.D. Tex. Jan. 4, 2017) ("[W]here the petition for leave to amend the complaint has been filed prior to the expiration of the statute of limitations, while the entry of the court order and filing of the amended complaint have occurred after the limitations period has expired . . . the amended complaint is deemed filed within the limitations period.") (citing *Mayes v. AT&T Info. Servs., Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989) (per curiam) (citing *Rademaker v. E.D. Flynn Export Co.*, 17 F.2d 15, 17 (5th Cir. 1927)); also citing *Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993) ("As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations.")).

The Court deems Intervenor Plaintiff's Amended Original Complaint filed on September 9, 2021, the date Intervenor filed his amended motion for leave. *Campbell v. Ahern Rentals, Inc.*, No. 3:20-CV-00477-E, 2020 WL 10816630, at *2 (N.D. Tex. July 9, 2020); *see also* Local Rule CV-7(k) ("If the motion for leave to file is granted, the document will be deemed to have been filed as of the original date of its filing."). Thus, Intervenor's amended complaint was timely filed within two years of the accrual date.[18]

## VI. RECOMMENDATION

Based on the foregoing analysis, it is hereby

---

[18] Because the Court finds Intervenor's complaint was timely filed, the Court does not need to consider whether Defendants are equitably estopped from relying on the limitations defense because they fraudulently concealed the cause of the injury by refusing to release the video of the incident until just at or near the expiration of limitations.

**RECOMMENDED** that Defendants' First Motion for Summary Judgment (Dkt. No. 59) be **DENIED**.

Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 17th day of August, 2023.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE