## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| PARIS THORPE, individually, as Next Friend of A.B. and on Behalf of the Estate of Darren Boykin | § § § | |
| Plaintiff, | § § | |
| DARREN BOYKIN, SR. Individually, | § | CIVIL ACTION NO. 5:21-CV-106-RWS-JBB |
| Intervenor Plaintiff, | § | |
| v. | § § | |
| JERRIKA WEAVER, BRENT HOBBS, AND WILLIAM SCOTT, | § § | |
| Defendants. | § | |

## <u>ORDER</u>

Before the Court are Defendant Jerrika Weaver's Motion for Summary Judgment on Plaintiff and Intervenor's Deliberate Indifference Claim (Docket No. 89) and Defendant Brent Hobbs and William Scott's Motion for Summary Judgment on Plaintiff and Intervenor's Deliberate Indifference Claim and Scott's Supervisory Liability Claim (Docket No. 91). The motions are fully briefed. Docket Nos. 89, 91, 113–118, 126, 127; *see also* Docket No. 138.

Plaintiff Paris Thorpe[1] and Intervenor Darren Boykin, Sr. (collectively "Plaintiffs") bring this action under 42 U.S.C. § 1983. Docket Nos. 1, 7, 10-1. The case was referred to United States Magistrate Judge Boone Baxter in accordance with 28 U.S.C. § 636. The Magistrate Judge issued a report recommending that Defendants' motions be granted and that Plaintiffs' claims against Defendants be dismissed. Docket No. 159. Plaintiff filed timely objections to the report (Docket No. 167), which Intervenor joined (Docket No. 168).

---

[1] Thorpe replaced the original Plaintiff, Keisha Boykin. *See* Docket No. 39.

A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also Williams v. Steward Health Care Sys., LLC*, No. 5:20-CV-00123-RWS-CMC, 2022 WL 575939, at *5 (E.D. Tex. Feb. 25, 2022). Any portion of the report for which no objection is filed is reviewed by the Cout for clearly erroneous factual findings and conclusions of law. *Williams*, 2022 WL 575939, at *5.

For the reasons given below, Plaintiffs' objections are **OVERRULED** and the report is **ADOPTED** as the opinion of the Court.

## I.      Background[2]

The above-captioned case arises out of the in-custody death of 23-year-old Darren Boykin, Jr. ("Boykin"). On August 29, 2019, Boykin was arrested by Texarkana College Police Officers after an approximately half-mile foot chase in around 90-degree Fahrenheit heat. Texarkana Texas Police Officers Brent Hobbs, William Scott, and Jerrika Weaver arrived at the scene of the arrest. At the scene of the arrest Boykin complained of an inability to breathe and difficulty in standing up, was carried partially to Weaver's vehicle, and repeatedly yelled for help. Boykin was able to climb into the backseat of Weaver's vehicle.[3] Weaver then transported Boykin to the Bi-State Justice Building ("Bi-State jail").

During the first half of transport, Boykin repeatedly stated that he was having difficulty breathing but was responding to Weaver. During the second half, Boykin lost consciousness and ceased responding to Weaver. After Weaver parked her vehicle at the Bi-State jail she discovered

---

[2] This section includes a high-level summary of the undisputed facts. *See e.g.*, Docket Nos. 89 at 9–15, 91 at 10–16, 113 at 6–13, 115 at 8–12.

[3] Before Boykin was transported to Bi-state jail all three Defendants were aware of Boykin's complaints but Scott had no direct interaction with Boykin.

Boykin was unconscious and not breathing. Weaver began resuscitation efforts, which Scott took over after he arrived separately at the Bi-State jail. The Bi-State jail nurse and emergency medical services were called and arrived shortly thereafter. LifeNet transported Boykin to Wadley Regional Medical Center.

Boykin tragically died. An autopsy showed his death arose from exercise collapse associated with sickle cell trait ("ECAST"), which was triggered by the foot chase that occurred immediately prior to his arrest. It is undisputed that no one knew that Boykin had the sickle cell trait until after his death.

## II.     Legal Standards

### A.     Summary Judgment

Summary judgment is used to isolate and dispose of factually unsupported claims or defenses and is appropriate where movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017). The resolution of a dispute of material fact "is the exclusive province of the trier of fact and may not be decided at the summary judgment stage." *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n.3 (5th Cir. 2002). A court should construe all facts and reasonable inferences in favor of the non-movant. *See Austin*, 864 F.3d at 328.

The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the nonmovant bears the burden of proof, however, the movant may discharge its

burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325. Here, "[a] qualified immunity defense alters the usual summary judgment burden of proof" because the plaintiff must overcome qualified immunity by "establishing a genuine [dispute of material fact] as to whether the official's allegedly wrongful conduct violated clearly established law." *Bey v. Prator*, 53 F.4th 854, 857 (5th Cir. 2022) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)) (alteration in original).

### B.      Qualified Immunity

The defense of qualified immunity protects Defendants if "their actions could reasonably have been believed to be legal." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1005 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)), *cert. denied*, 144 S. Ct. 348 (2023). "Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating that '(1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time.' " *Id.* (citations omitted). The Court has discretion to decide which of these two prongs to analyze first depending on the circumstances of the case. *Id.* The Court "need not reach the more difficult constitutional question" if "the right asserted was not clearly established." *Id* (citations omitted). As the Fifth Circuit recently summarized:

> Clearly established law is determined by controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity. With qualified immunity, the Supreme Court has repeatedly instructed that clearly established law is *not* to be defined at a high level of generality. This is particularly true in recent years. For conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.
>
> . . . Thus, qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. It likewise shields an officer from suit when the officer makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances the officer confronted. In short, when properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

> Consequently, qualified immunity is justified unless no reasonable officer could have acted as the defendant officers did here, or every reasonable officer faced with the same facts would not have acted as the defendant officers did.

*Tucker v. City of Shreveport*, 998 F.3d 165, 173–174 (5th Cir. 2021) (citations and internal quotations omitted).

At the motion for summary judgment phase, courts must make all inferences in plaintiff's favor and may not resolve either prong of qualified immunity by "resolv[ing] genuine disputes of fact in favor of the party seeking summary judgment." *Id.* at 173 (citing *Brown*, 623 F.3d at 253). The Court may "consider[ ] only the facts that were knowable to the defendant officers"—facts learned after the incident are not relevant. *Id.* (citations omitted).

## C.      Deliberate Indifference

The Fourteenth Amendment "bars law enforcement from responding to a detainee's serious medical needs with deliberate indifference." *Williams v. City of Yazoo, Mississippi*, 41 F.4th 416, 423 (5th Cir. 2022) (citations omitted). To prove deliberate indifference the plaintiff must show "[1] defendants knew that [the decedent] faced a substantial risk of serious harm and [2] failed to take reasonable measures to abate that risk." *Id.* The inquiry evaluates each defendant's subjective knowledge—the question is what each defendant knew, "not what they 'should have perceived but did not.' " *Id.* The reasonableness question is objective and considers whether the officers "response to a known risk was reasonable as a matter of law." *Id.* This means that the plaintiff must show that the law enforcement officer was aware of a substantial risk of serious harm and nevertheless refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *See Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022). "[A]n officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference." *Trevino v. Hinz*, 751 F. App'x 551, 555 (5th Cir. 2018).

### III.    Analysis

The Magistrate Judge issued a 71-page report recommending that Defendants' motions for summary judgment be granted and that Plaintiffs' claims against Defendants be dismissed with prejudice. Docket No. 159. The report thoroughly evaluated the evidence in the record, including the video footage, expert reports, affidavits, and deposition testimony. *Id.* at 8–39. Based on this thorough review, the report determined that Defendants "failed to realize that there was a medical emergency" because the risk of serious harm to Boykin "was anything but obvious." *Id.* Separately, the report recommends dismissing these claims based on qualified immunity because even if Defendants' failure to provide medical aid amounted to a constitutional violation, Plaintiffs fail to demonstrate that such a constitutional violation, if established, violated clearly established law at the time of Boykin's arrest in 2019. *Id.* at 3.

Plaintiffs make four objections to the report. Docket No. 167. First, Plaintiffs dispute the report's analysis of Defendants' actual knowledge at the scene of the arrest as well as Weaver's knowledge during transport. *See id.* at 2–8. Second, Plaintiffs argue the report misstates Plaintiffs' argument that Defendants had a duty to "provide aid" and "assure [Boykin] received medical attention" because of Boykin's "complaints of an inability to breathe, an inability, an inability to sit up." *Id.* at 8. Third, Plaintiffs challenge the report's reliance on *Batiste v. Theriot*, 458 F. App'x. 351 (5th Cir. 2012). Docket No. 167 at 9. Fourth, Plaintiffs object to the report because Plaintiffs "pointed to many cases that show [Defendants] had a duty to provide medical attention." *Id.* at 10. Upon a *de novo* review, each of Plaintiffs' objections lacks merit.

#### A.    Plaintiffs' First Objection

Plaintiffs' first objection argues that the report failed to apply the proper summary judgment standard because the report "ignores the contradicting evidence and looks only to the

evidence from the movants." Docket No. 167 at 6; *see also id.* at 2–8. Specifically, Plaintiffs allege the recommendations of the report could only be reached if the Magistrate Judge ignored "the video of Boykin [] at the scene of the arrest, the video in the back of Weaver's car in conjunction with the video showing the reflection of Weaver looking at Boykin [], or the opinion of [Plaintiffs' expert] Former Officer Madison." *Id.* at 5. Plaintiffs also generally argue that the opinion improperly resolved several fact issues, such as whether Weaver could see Boykin's face during transport. *See id.* at 5–8. Plaintiffs also object to the report's finding that Plaintiffs failed to show deliberate indifference because at most they established "Weaver's understanding was wrong, *i.e.*, that she was negligent, unobservant, or drew the wrong inferences from the situation." *Id.* at 7–8.

Defendants respond that the report applied the correct burden of proof, assigned the video evidence the appropriate weight, and properly required Plaintiffs to rebut the defense of qualified immunity. Docket No. 169 at 1–2. Defendants primarily argue that Plaintiffs' objections rely heavily on portions of Madison's opinions that Plaintiffs did not cite or refer to either in Plaintiffs' briefing or at the hearing. *Id.* 2, 4. Defendants further argue that the report correctly considered Madison's opinion that "Weaver was able to observe from the front seat that Boykin was slumped over, unconscious, with agonal breathing, gasping for air" but that even if Weaver had seen this, the symptoms Weaver was aware of were not obvious enough to show Weaver had actual knowledge of a known serious medical condition. *Id.* Defendants also point to the report's reliance on Plaintiffs' expert who agreed that Weaver misconstrued symptoms during transport and became aware of Boykin's medical distress at the jail garage. *Id.* at 5. Defendants further note that the Plaintiffs' complaint alleges that Weaver could *not* see Boykin's face "as she passed by Wadley Hospital" approximately three to four minutes before arriving at Bi-state jail. *Id.* at 6. Defendants

also argue Plaintiffs fail to address that much of the evidence the report relied on was uncontroverted and unchallenged. *Id.* at 2, 5–6.[4]

The Court has extensively reviewed the video evidence, both alone and in combination, the expert reports, deposition testimony, and other record evidence to understand each officer's knowledge and actions during Boykin's arrest and transport.[5] As tragic as Boykin's death is, the Court must consider Defendants' motion for summary judgment in view of the officers' knowledge at the time of Boykin's arrest and transport—not based on how the officers should have acted with the benefit of hindsight. Viewed in the light most favorable to Plaintiffs, the Court agrees with the report that there is no fact dispute sufficient to show Defendants had knowledge of a *known* serious medical condition or that the symptoms that Defendants *were aware of* were so obvious that Defendants should have concluded Boykin was at substantial risk of serious harm. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020).

First, Plaintiffs mischaracterize the report's weighing of the evidence. The report does not ignore Plaintiffs' evidence—approximately 30 pages are spent summarizing facts from both parties' pleadings, including time-stamped references to the bodycam and dashcam videos as well as Officer Madison's report. Docket No. 159 at 11–39. The Magistrate Judge applied the proper summary judgment standard by viewing the evidence in the light most favorable to Plaintiffs. *See*

---

[4] Defendants also argue that Plaintiffs failed to rebut that presumption of qualified immunity because Plaintiffs were unable to articulate a statutory or constitutional right that was established "beyond debate" at the time of Boykin's death. *Id* at 2, 6–7. The Court agrees and addresses this issue herein.

[5] While performing the *de novo* review, the Court examined all the video evidence in this case extensively, including the multiple copies provided by the parties. *See, e.g.*, Docket Nos. 89-7, 89-9, 89-13, 114 at 485–488 (Exs. H–K), 116 at 367–370 (Exs. G–J). The Court considered any screenshots provided by the parties or their experts in view of the videos, giving greater weight to the recordings than a description of the facts. *See Salazar*, 37 F.4th at 280; *see also Poole v. City of Shreveport*, 13 F.4th 420, 425 n.4 (5th Cir. 2021).

*id.* at 6–7. The Magistrate Judge also correctly noted that the qualified immunity defense alters the usual summary judgment burden of proof. *Id.* at 6–8. Finally, the Magistrate Judge correctly explained that "when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should 'view[ ] the facts in the light depicted by the videotape.' " *See* Docket No. 159 at 7 (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016); *see also Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (finding that if there is video or bodycam footage, the court should "view[] the facts in the light depicted by the videotape" and give greater weight to the recording than a party's description of the facts). The Magistrate Judge correctly applied these legal standards—Plaintiffs' objections are without merit.[6]

    *Second*, Plaintiffs' objections are a reversal of their original position, where Plaintiffs downplayed the importance of the video evidence and failed to cite Madison's opinions that they now rely on.[7] *See, e.g.*, Docket Nos. 113 at 13–14, 115 at 12–13; *compare also, e.g.*, Docket No. 167 at 3–4, 7 (citing pages 16–22 of Madison's report[8] in which he summarizes the video evidence) *with* Docket No. 113 at *also id.* at 13, 22 (citing Madison's testimony about Defendants' duty but not his opinions about the videos or Weaver's knowledge); *see also id.* at 22 (same). Nevertheless,

---

[6] Plaintiffs' objections provide several examples of what they believe to be a failure to view the evidence in the light most favorable to the non-movant. *See generally* Docket No. 167 at 3–8. The Court has considered each of these arguments and finds the report correctly weighs each example. For example, while the video itself is more probative than an individual's characterizations of videos, the report correctly determines the affidavits at issue are consistent with the video evidence at the scene and considers the affidavits in light of the videos in making its recommendation.

[7] Local Rule CV-56 instructs the parties that a summary judgment motions (and responses) "should use appropriate citations to proper summary judgment evidence." Local Rule CV-56(a)–(b). The rule instructs parties to cite relevant evidence by "page and, if possible, line." *Id.* at 56(d).

[8] *See* Docket No. 116 at 161–167.

the report correctly considered Madison's opinions—including his characterizations of the videos—and Defendants' knowledge in light of the video evidence.

The Magistrate Judge correctly considered Madison's characterizations of the videos, despite Plaintiffs' failure to cite or rely on these opinions and characterizations of the videos in their original briefing. *See, e.g.*, Docket No. 159 at 13–15, 19, 33–34 (citing portions of Madison's report that Plaintiffs' original briefing did not rely on). Indeed, the report specifically notes that "according to Madison, Weaver was able to observe from the front seat that Boykin was 'slumped over, unconscious, with agonal breathing, gasping for air.' " *Id.* at 54 (quoting Docket No. 116 at 161). Contrary to Plaintiffs' assertion that the "opinion does not even consider the video of the transport," the report includes six distinct references to "Weaver Rear Seat Video" and seven references to the "Weaver Body Camera" while discussing Boykin's transport from the scene of the arrest to the jail garage. *Id.* at 27–31. The report does not use the video evidence to "contradict" Plaintiffs' evidence; rather, it views Plaintiffs' facts in the light of the video evidence.

The report correctly finds that, even assuming Weaver could see Boykin as alleged by Madison, the symptoms Weaver was aware of were not so obvious to conclude she had actual knowledge of Boykin's distress. *See, e.g.*, Docket No. 159 at 54.[9] The medical experts agreed that it was not apparent that Boykin was in serious distress until around the 14:25 to 14:50 video mark. *See, e.g.*, Docket Nos. 89-1 at 46:14–22, 89-18 at 13; 114 at 163, 339–340 (O'Connor Dep. at 68:12–69:4). Plaintiffs' medical expert, Dr. Francis O'Connor, also testified he would not expect nonmedical professionals such as police officers to be able to recognize an exercise collapse

---

[9] Plaintiffs mention Weaver's admission that she would have made different choices if she had been able to see the rear dash cam video while driving Boykin. But knowledge obtained after the incident is not relevant. *See Tucker*, 998 F.3d at 17.

associated with sickle cell trait ("ECAST") event. Docket No. 114 at 317 (O'Connor Dep. at 46:18–22); *see also id.* at 344 (O'Connor Dep. at 73:5–18).[10]

For the second half of transport, Madison opines that Weaver looked back at Boykin approximately 10 times after Boykin's medical distress became evident to the medical professionals. Docket No. 116 at 163–167. But the longest time Madison alleges Weaver stared at the unconscious Boykin was for eight seconds. *Id.* As Plaintiffs point out, Weaver's "fun fact" shortly thereafter shows that she was at least aware that Boykin was slumped over, whether she could see his face or not. Even crediting Madison's assumption[11] that Weaver had an unobstructed view of Boykin's face during each of those 10 brief glances, the Court agrees with the report's conclusion that the most Plaintiffs "could establish is that Weaver's understanding was wrong, *i.e.*, that she was negligent, unobservant, or drew the wrong inferences from the situation—which, as explained [in the report], is not sufficient to show deliberate indifference." *See* Docket No. 159 at 61. The evidence shows that Weaver first recognized Boykin's symptoms were serious when they reached Bi-state jail. *See, e.g.*, Docket No. 89-1 at 14:18–16:12, 19:14–20:18; *see also* Docket No. 114, Exs. H and I; *id.* at 344 (O'Connor Dep. at 73:5–18).

The report does not "ignore" Plaintiffs' arguments or evidence—instead the report correctly considers both parties' summary judgment evidence. The evidence before the Court— viewed in the light most favorable to the Plaintiffs—simply does not create a fact issue sufficient

---

[10] The medical experts' agreement that Boykin's symptoms were not obvious to medical professionals until he lost consciousness during transport also supports the report's finding that Scott and Hobbs were not deliberately indifferent.

[11] Plaintiffs rely solely on Madison's opinions to rebut Weaver's assertions that she could not see Boykin's face during transport. The report, however, correctly finds that neither Madison nor Plaintiffs provide any evidence rebutting the reconstruction report of Alex Germane, which supports Weaver's testimony that she could not see Boykin's face.

to show that Defendants had knowledge of a known serious medical condition or that the symptoms that they were aware of were so obvious that they should have concluded otherwise. Thus, Plaintiffs' first objection is without merit.

### B.      Plaintiffs' Second Objection

Plaintiffs' second objection is that the report misstates their argument that "based on the circumstances then facing the Defendants, they had a duty to provide aid." Docket No. 167 at 8. Plaintiffs argue that "Defendants did not have to diagnose the medical condition, instead based on complaints of an inability to breathe, an inability to sit up, etc. the movants had a duty to assure non-movant received medical attention." *Id.* Defendants respond that the report correctly applies the law to find that Defendants misunderstood the source of Boykin's symptoms, their seriousness, and the possible complications. *See* Docket No. 169 at 7. Defendants emphasize that Boykin's sickle cell trait condition was unknown at the time. *Id.*

The Magistrate Judge did not misstate Plaintiffs' argument. There is no dispute that Defendants knew that Boykin complained of his symptoms, including the difficulty he had breathing and talking, sitting and standing up, his pain, and other symptoms. Defendants placed him in an air-conditioned car and informed him he would see a nurse when he arrived at Bi-State jail. Throughout this litigation, Plaintiffs argued that Defendants should have "summoned emergency medical assistance" to the scene of the arrest. At the hearing, however, Plaintiffs conceded this argument fails as a matter of law. *See* Docket No. 151 at 102:8–11.[12]

---

[12] The report correctly found—and Plaintiffs do not challenge—that this right was not clearly established at the time of Boykin's 2019 arrest based on *Cope v. Cogdill*, in which the Fifth Circuit stated "[u]ntil today, we have not spoken directly on whether failing to call for emergency assistance in response to a serious threat to an inmate's life constitutes deliberate indifference." 3 F.4th 198, 209 (5th Cir. 2021); *see also Reed v. Nacogdoches Cnty.*, No. 22-40126, 2023 WL 3563017, at *2 (5th Cir. May 19, 2023).

Given this concession, Plaintiffs shifted their theory. Plaintiffs now argue that Defendants should have offered "aid" in response to those known complaints and symptoms. But Plaintiffs submit no evidence of the alleged missing "aid" in their summary judgment briefing. *See, e.g.*, Docket Nos. 113, 115. Plaintiffs fail to show that the aid provided—air conditioning, removing Boykin from the sun, and offering to take him to see the jail nurse—was objectionably unreasonable. Moreover, the examples of aid provided by Plaintiffs—*e.g.* providing water or oxygen at the scene or stopping at Wadley Hospital as Weaver drove by—have not been shown to be supported by clearly established law. *See id.*; *see also id.* at 61:8–11. Accordingly, Plaintiffs' failure to provide medical aid argument fails because it is not (1) supported by the evidence of record, (2) sufficiently described by Plaintiffs' counsel, or (3) supported by clearly established law. The Magistrate Judge properly determined Plaintiffs' failure to provide medical aid argument fails as a matter of law. Thus, Plaintiffs' second objection is without merit.

### C.      Plaintiffs' Third Objection

Plaintiffs also object to the report's reliance on *Batiste*. Docket No. 167 at 8. Plaintiffs argue that the report uses *Batiste* "to show that a sickle cell trait could not rise to the level of a serious medical condition for which treatment has been recommended or which is so apparent even a layman would recognize it and thus there could be no deliberate indifference." *Id.* at 9 (citing Docket No. 159 at 3). According to Plaintiffs, *Batiste* is distinguishable because in that case "although unaware [of a serious medical condition], the police called an ambulance within two minutes of using a taser and the EMTs found no need to immediately transport Appellant to the hospital." *Id.*[13] Plaintiffs argue that *Batiste* does not apply here because "the police never called

---

[13] In *Batiste*, the ambulance was called "as required by department policy" because the decedent had been tased. 458 F. App'x at 356. Here, Boykin was not tased.

the ambulance and while at the scene of the arrest [and] did not have any medical professional examine a man who repeatedly claimed he could not breathe." *Id.* at 9–10.

Plaintiffs mischaracterize the report's reliance on *Batiste*. The Magistrate Judge did not rely on *Batiste* to show that sickle cell trait could *never* rise to the level of a serious medical condition. Instead, consistent with the medical experts' testimony, the report relied on *Batiste* to show that labored breathing following a foot chase was not so obvious as to imbue subjective knowledge of serious medical distress to the officers. The Magistrate Judge's report relies on *Batiste* simply to show that the Fifth Circuit has found that " 'sickling' brought on by exertion" (*i.e.*, an ECAST event) may present confusing symptoms, especially if the condition is unknown at the time. *See* 458 Fed. Appx. at 355–58.

The Court agrees that this precedent, coupled with the testimony of the experts here, shows that Defendants did not have actual knowledge that Boykin was in serious medical distress based on the symptoms and circumstances that Defendants were aware of. Accordingly, Plaintiffs' third objection is without merit.

### D.     Plaintiffs' Fourth Objection

Finally, Plaintiffs take issue with the report's analysis of qualified immunity.[14] First, Plaintiffs object to the report's opinion that "Plaintiffs' other complaint is that Defendants failed to 'do anything meaningful,' 'provide' medical care themselves, 'refused to treat,' or otherwise 'ignored' [Boykin]'s urgent medical risks, including that Weaver should have taken [Boykin] directly to the hospital (rather than anticipating aid from jail." Docket No. 167 at 10 (internal citations omitted). Plaintiffs dispute the report's conclusion that there is no "existing precedent"

---

[14] Plaintiffs' other objections are additionally and independently meritless because Plaintiffs still cannot articulate a specific constitutional right that was established "beyond debate" at the time of Boykin's death.

that "place[s] the . . . constitutional question[s]" in this case "beyond debate" because of the "many cases that show the movants had a duty to provide medical attention." *Id.* Defendants believe that Plaintiffs are simply rehashing their second objection. Docket No. 169 at 9.

To overcome Defendants' assertion of qualified immunity, Plaintiffs must show there is a genuine issue of material fact concerning (1) "whether the officer[s] violated a constitutional right" and (2) "whether the right at issue was clearly established at the time of the alleged misconduct." *Williams v. Zachary*, No. 21-60753, 2022 WL 2101518, at *3 (5th Cir. June 10, 2022) (quoting *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)). The report determined that Defendants did not commit a constitutional violation. Docket No. 159 at 64. In an abundance of caution, however, the Magistrate Judge assumed a constitutional violation had occurred and proceeded to the second question—whether Defendants violated a clearly established constitutional right at the time of Boykin's arrest in 2019. *Id.*

As discussed above, Plaintiffs fail to meet this burden for any of the alleged constitutional violations, including Defendants' failure to provide unspecified aid, Defendants' failure to call an ambulance at the scene of the arrest, and Weaver's failure to drive Boykin to Wadley Hospital. Regardless of the correct level of specificity in framing the constitutional violation, the Magistrate Judge correctly concluded Plaintiffs have not met the "heavy burden" of showing that Defendants violated "clearly established" law. *See id.* at 67. Plaintiffs do not specifically challenge this finding. Instead, Plaintiffs refer to cases already addressed in the report, arguing this precedent shows Defendants had a duty to provide medical attention to Boykin. Docket No. 167 at 10. As addressed above, there was not a "known" medical risk here. After performing a *de novo* review of the record, the Court agrees with the report's finding that it is not fair to say Defendants "refused" to treat

Boykin, or that they "ignored" his complaints despite a known medical risk. *See* Docket No. 159 at 66.

As the Magistrate Judge addressed in the report, the cases cited by Plaintiffs involving violations of clearly established law do not involve officers acting under similar circumstances. *See generally* Docket No. 159. For example, the report discussed *Nerren v. Livingston Police Dep't*, 86 F.3d 469 (5th Cir. 1996), explaining that in *Nerren* the detainee's "face and chest were marred with abrasions, he was in [obvious] pain, and he informed the [a]rresting [o]fficers that he needed medical attention" for his injuries and the detainee's need for care was obvious because the officers knew he "had recently been involved in a multiple vehicle . . . accident." *Id*. at 59–60 (quoting *Zachary*, 2022 WL 2101518, at *4). The report distinguished Defendants here from the officers in *Nerren* because Defendants were not on notice that Boykin had sickle cell trait—the cause of his death. *Id.* The report correctly found that the Fifth Circuit has held that officers who are not medical professionals are entitled to qualified immunity when they attribute the source of labored breathing to a foot chase. *Id.* at 68–69 (citing *Batiste*, 458 F. Appx. at 357–58). Plaintiffs' objections do not show how the report errs in its analysis of *Nerren*. Plaintiffs also cite *Williams* in this objection but again fail to address the report's extensive discussion of *Williams* and why it does not control here. *Id.* at 48–52 (finding *Williams* distinguishable on the subjective awareness prong). Accordingly, Plaintiffs' objections are meritless.

Importantly, Plaintiffs do not specifically object to several important findings regarding qualified immunity, including the finding that the right to have emergency medical services called was not clearly established on August 29, 2019. Further, Plaintiffs do not object to the report's finding that the officers' conduct was objectively reasonable under the circumstances (*i.e.*, their knowledge that Boykin was breathing heavily following a long run in the summer heat). *See*

Docket No. 159 at 70. These portions of the Magistrate Judge's report are not clearly erroneous. Thus, the unobjected-to portions of the report are sufficient to adopt the report's independent basis for recommending that summary judgment be granted in Defendants' favor on qualified immunity grounds. For these additional reasons, Plaintiffs' fourth objection is also without merit.

## IV.  Conclusion

The Court has conducted a thorough and careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiffs objected.  *See* 28 U.S.C. § 636(b)(1)(C) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the report of the Magistrate Judge is correct, and the Plaintiffs' objections are without merit. Accordingly, it is

**ORDERED** that Plaintiffs' objections (Docket Nos. 167, 168) are **OVERRULED**. It is further

**ORDERED** that the Report of the Magistrate Judge (Docket No. 159) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that Motion for Summary Judgment of Defendant Jerrika Weaver on Plaintiff and Intervenor's Deliberate Indifference Claim (Docket No. 89) and Motion for Summary Judgment of Defendants Brent Hobbs and William Scott on Plaintiff and Intervenor's Deliberate Indifference Claim and Defendant William Scott's Motion for Summary Judgment on Supervisory Liability Claim (Docket No. 91) are **GRANTED**. It is further

**ORDERED** that the above-captioned matter is **DISMISSED WITH PREJUDICE**.

So ORDERED and SIGNED this 18th day of June, 2024.

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE